IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| BIGLER LP; | § | Case No. 09-38188 |
| BIGLER LAND, LLC; | § | Case No. 09-38189 |
| BIGLER PETROCHEMICAL, LP; | § | Case No. 09-38190 |
| BIGLER PLANT SERVICES, LP; | § | Case No. 09-38192 |
| BIGLER TERMINALS, LP | § | Case No. 09-38194 |
| | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | JOINTLY ADMINISTERED |
| | § | UNDER CASE NO. 09-38188 |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 and 364:  (I) APPROVING USE OF CASH COLATERAL; (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES; (III) AUTHORIZING DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, AND (B) GRANT SENIOR LIENS, JUNIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the Motion, dated November \_\_\_\_, 2009 (the "Motion"), of Bigler LP ("Bigler"), Bigler Land, LLC ("Land"), Bigler Petrochemical, LP ("Petrochemical"), Bigler Plant Services, LP ("Plant Services") and Bigler Terminals, LP ("Terminals"), each a debtor and debtor in possession (collectively, the "Debtors"), and certain of their affiliates (collectively, the "Borrowers") for entry of interim and final orders (I) (A) authorizing and approving the Debtors' use of cash collateral (the "Cash Collateral") of the Pre-Petition Lenders (as defined below), pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"); (B) providing the Pre-Petition Lenders with adequate protection of their interests in certain property of the Debtor Obligors (as defined below); and (C) pursuant to sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the local rules of the United States

Bankruptcy Court for the Southern District of Texas (the "Local Rules"), authorizing the Debtors to enter into the DIP Facility (as defined below) and grant senior liens, junior liens and superpriority administrative expense claims in connection therewith; (II) scheduling a final hearing with respect to the relief requested in the Motion, and (III) granting such other related relief, all as more fully described in the Motion; and the Motion having sought, *inter alia*, the following particular interim relief:[1]

(a)    authorization for (a) the Borrowers to obtain up to [$_____] in principal amount of postpetition financing (the "Interim DIP Loans") under a [$10,000,000] aggregate principal amount debtor in possession financing facility (the "DIP Facility") on the terms and conditions set forth in this Interim Order and consistent with the terms of the term sheet attached hereto as Exhibit "A" (the "DIP Term Sheet") pursuant to a proposed Debtor-in-Possession Credit Agreement (in form and substance acceptable to the DIP Lender) to be executed and delivered (as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Agreement"; together with all agreements, documents and instruments delivered or executed in connection herewith or therewith, including, without limitation, the Agreed Budget (as defined in paragraph F below), in each case as hereafter amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Documents"), among the Borrowers and Amegy Bank National Association ("Amegy" or the "DIP Lender"), and (b) each Borrower to guaranty the obligations of each other Borrower in connection with the DIP Facility and for each

---

[1] Unless otherwise indicated, capitalized terms used but not immediately defined herein have the meanings ascribed to such terms later in this Interim Order.

of the other Debtors (the "DIP Guarantors") to guaranty the Borrowers' obligations in respect of the DIP Facility;

(b)      authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(c)      authorization for the Debtors to grant security interests, liens and superpriority claims (including a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code and liens pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code) on and against all of the tangible and intangible property of the Debtors to the DIP Lender to secure all obligations of the Debtors in respect of the DIP Facility;

(d)      authorization for the Debtors to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code) in which the Pre-Petition Lenders have an interest in accordance with the terms of this Interim Order;

(e)      authorization of the Debtors' granting of adequate protection to the Pre-Petition Lenders for, among other things, the Debtors' use of Cash Collateral and the Debtors' use, and any resulting diminution in the value of, the Pre-Petition Collateral;

(f)      that, pursuant to the applicable provisions of the Bankruptcy Code, including sections 361, 363, 503(b) and 507(b) thereof and the terms of this Interim Order, the Pre-Petition Lenders, whose Cash Collateral and other Pre-Petition Collateral may be used by the Debtors, be granted to the extent of diminution in value, as allowed by applicable law, the following as adequate protection of their interests: (i) a superpriority claim having priority over all administrative expenses, subject and

subordinate only to the Carve-Out and, the claims under the DIP Facility, (ii) replacement liens on substantially all property and assets of the Debtors, wherever located, subject only to (x) the Carve-Out, (y) the DIP Liens (defined below), and (z) any valid, perfected, enforceable and unavoidable liens (A) existing as of the Petition Date or (B) pursuant to sections 546 and 362(b)(18) of the Bankruptcy Code, which are permitted to exist under the Pre-Petition Loan Documents and that are otherwise senior to the Pre-Petition Liens in favor of the Pre-Petition Lenders securing repayment of the Pre-Petition Obligations, if any (such liens described in this clause (z), the "Permitted Liens"); and (iii) payment of all reasonable costs and expense of any counsel or financial advisors to Amegy, including reasonable attorney and advisor fees on a current basis without the need for filing fee applications or fee statements, subject to review and objection as provided herein; and

(g)     that, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") be held before this Court to consider entry of this interim order (the "Interim Order") and further requesting that a final hearing (the "Final Hearing") thereafter be held before this Court to consider entry of a final order (the "Final Order") authorizing on a final basis the Debtors' use of Cash Collateral, the granting of adequate protection to the Pre-Petition Lenders, approval of and authority to enter into the DIP Facility and provide the DIP Liens and such other relief as set forth herein and in the Motion.

IT APPEARING that, pursuant to Bankruptcy Rule 4001(c)(1), notice of the Interim Hearing upon the Motion having been given to (a) the United States Trustee for the Southern District of Texas (the "U.S. Trustee"); (b) counsel to Amegy and the other Pre-Petition Lender; (c) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (d) the taxing authorities with jurisdiction over the Debtors' assets as of the Petition Date; and (e)

the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, (collectively, the "Notice Parties"); and this Court having concluded, given the nature of the relief sought in the Motion, that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and that no further notice relating to this proceeding is necessary or required; and the Interim Hearing having been held on November __, 2009; and upon all of the pleadings filed with the Court, and all of the proceedings held before the Court; and upon the Declaration of David Gullickson in support of the Debtors' first day motions and orders] (the "First Day Affidavit"); and upon the record of the Interim Hearing; and the Court having noted the appearances of all parties in interest in the record of this Court; and all objections to the relief requested in the Motion having been resolved or overruled by the Court, and after due deliberation and consideration, and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.      Commencement of the Cases.  On October 30, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession, pursuant to sections 1007 and 1008 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases (the "Cases").  A statutory committee of unsecured creditors (the "Committee") has not been appointed in the Cases as of the date hereof.

B.      Jurisdiction.  The Court has jurisdiction over the Debtors' Cases, the parties and the Debtors' property pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for

the relief sought herein include sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(b) and (d), 6004, and 9014.  Venue of the Cases in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.      <u>Debtors' Stipulations and Waivers Regarding the Pre-Petition Lenders' Interests</u>. Without prejudice to the rights of any other party in interest as set forth in and subject to the limitations described in paragraph **[24]** below, the Debtors admit, stipulate, acknowledge and agree that:

      (i)      <u>The Pre-Petition Credit Facility Agreements</u>.  Prior to the Petition Date, (x) each of Bigler and Land entered into that certain Amended and Restated Credit Agreement dated April 17, 2008 (as amended from time to time prior to the date hereof, the "<u>Pre-Petition Credit Agreement</u>," and together with the collateral documents, instruments and other agreements entered into in connection therewith, as amended from time to time prior to the date hereof, the "<u>Pre-Petition Credit Agreement Loan Documents</u>"), with Amegy as the administrative and collateral agent (in its capacity as such, the "<u>Pre-Petition Agent</u>"), and the lenders party thereto from time to time (in their capacities as such, the "<u>Pre-Petition Credit Agreement Lenders</u>"), and (y) Bigler entered into that certain Loan Agreement dated May 18, 2007 (as amended from time to time prior to the date hereof, the "<u>Pre-Petition Loan Agreement</u>," and together with the collateral documents, instruments and other agreements entered into in connection therewith, as amended from time to time prior to the date hereof, the "<u>Pre-Petition Loan Agreement Loan Documents</u>"), with Amegy.  Hereafter, the Pre-Petition Credit Agreement and the Pre-Petition Loan Agreement are collectively referred to as the "<u>Pre-Petition Credit Facilities Agreement</u>," the Pre-Petition Credit Agreement Loan

Documents and the Pre-Petition Loan Agreement Loan Documents are collectively referred to as the "Pre-Petition Loan Documents," and the Pre-Petition Credit Agreement Lenders and Amegy, in its capacity as the lender pursuant to the Pre-Petition Loan Agreement, are collectively referred to as the "Pre-Petition Lenders."  Pursuant to the Pre-Petition Credit Facilities Agreements, the Pre-Petition Lenders (i) extended revolving credit loans and term loans (the "Pre-Petition Loans") to Bigler in the aggregate principal amount of $67,000,000 and (ii) issued letters of credit for the benefit of the Debtors in the amount of $1,200,000.  Pursuant to Pre-Petition Loan Documents, the Debtors other than Bigler and Land (in the case of the obligations under the Pre-Petition Credit Agreement) and other than Bigler (in the case of the Pre-Petition Loan Agreement) (the "Debtor Guarantors") and certain non-debtor subsidiaries and affiliates, are liable as guarantors for payment of the Pre-Petition Loans and the other obligations under the Pre-Petition Loan Documents.  The Pre-Petition Loans, together with all other obligations arising under the Pre-Petition Loan Documents (including without limitation all interest, fees and expenses arising thereunder) shall be referred to collectively as the "Pre-Petition Obligations".  To secure the Pre-Petition Obligations, the Debtors granted to the Pre-Petition Agent, for the benefit of the Pre-Petition Credit Agreement Lenders, and to Amegy, in its capacity as the lender pursuant to the Pre-Petition Loan Agreement, first priority liens on, and security interests in (the "Pre-Petition Liens"), substantially all of the Debtors' assets, both tangible and intangible, real and personal, including *inter alia*, the Debtors' accounts, inventory, machinery and equipment, owned real property, leasehold interests, chattel paper, books and records, intellectual property, licenses, deposit accounts, negotiable collateral, securities, general intangibles, right, title and

interest in and to all shares of capital stock (or other equity or partnership interests) of each of their subsidiaries and the proceeds and recoveries of the foregoing (collectively, and as more particularly described in the Pre-Petition Loan Documents, the "Prepetition Collateral"), which Pre-Petition Liens may be subject to certain Permitted Liens. The Debtors acknowledge and agree that the Debtors are duly and validly indebted to the First Lien Lenders in respect of outstanding and contingent obligations under the Pre-Petition Loan Documents.

(ii)     The Pre-Petition Loan Documents.  The Pre-Petition Loan Documents between and among, *inter alia*, the Debtors, the Pre-Petition Lenders, and the Pre-Petition Agent create legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(iii)     The Pre-Petition Debt Amount. As of the Petition Date, (x) the amount due and owing under the revolving credit facility of the Pre-Petition Loan Agreement was $10,040,278 (consisting of $10,000,000 in principal, plus accrued and unpaid interest in the amount of $40,277.78), together with all fees, costs and expenses authorized under the Pre-Petition Loan Documents, (y) the outstanding amount of undrawn letters of credit issued under the Pre-Petition Loan Agreement equaled $1,200,000, plus accrued and unpaid fees, costs and expenses authorized under the Pre-Petition Loan Documents and (z) the amount  due and owing under the term loans made pursuant to the Pre-Petition Credit Agreement equaled $57,242,748 (consisting of $57,000,000 in principal, plus accrued and unpaid interest in the amount of $242,748), together with all fees, costs and expenses authorized under the Pre-Petition Loan Documents.   The Pre-Petition

Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Loan Documents; no offsets, defenses or counterclaims to and of the Pre-Petition Obligations exists; and no portion of the Pre-Petition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or other applicable law.

(iv)     The Pre-Petition Liens.  The Pre-Petition Liens held by the Pre-Petition Agent on behalf of itself and the Pre-Petition Lenders and by Amegy, in its capacity as the lender pursuant to the Pre-Petition Loan Agreement, with respect to the Prepetition Collateral pursuant to the Pre-Petition Loan Documents are valid, enforceable, properly perfected and non-avoidable first priority liens (which may be subject to certain Permitted Liens), with such Prepetition Collateral consisting of substantially all of the Debtors' respective assets, tangible and intangible, real and personal, including, without limitation, (a) the Debtors' respective accounts, inventory, machinery, equipment, fixed assets, chattel paper, books and records, deposit accounts, money, and investment property, (b) leasehold interests and owned real property and improvements, including without limitation land and facilities located in Harris County, Texas, where the Debtors' primary petrochemical, manufacturing, storage, terminaling, etc. facilities are located, (c) the Debtors' respective intellectual properties and licenses, and (d) pledges of all right, title and interest in 100% of the outstanding stock and other interests of the direct and indirect subsidiaries of Bigler.

(v)     Waiver.  The Debtors (i) waive and release any and all claims (as such term is defined in the Bankruptcy Code), counterclaims, causes of action, recoupments, setoffs or defenses of any kind or nature which would in any way affect the validity,

enforceability and non-avoidability of the Pre-Petition Obligations owing under the Pre-Petition Loan Documents or any of the Pre-Petition Lenders' liens, claims or security interests, or, reduce or affect the obligations of the Debtors to pay any of the Pre-Petition Agent's or the Pre-Petition Lenders' claims; and (ii) further waive and release any and all offsets, defenses, claims (as such term is defined in the Bankruptcy Code), causes of action or counterclaims against the Pre-Petition Agent, the Pre-Petition Lenders and their respective offices, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity. These waivers shall be binding on the Debtors and any of their successors-in-interest and assigns, but are subject to the provisions contained in paragraph **[24]** below.

D.      The Agreed Budget.  The Debtors believe that the operating budget, attached as Exhibit "B" hereto (the "Agreed Budget", is achievable and will allow the Debtors to operate in the Cases without the accrual of unpaid administrative expenses.  The Pre-Petition Lenders and the DIP Lender are relying upon the Debtors' compliance with the Agreed Budget (subject to amendment as contemplated in the DIP Agreement) in accordance with this Interim Order in determining to consent to the Debtors' use of Cash Collateral and extending the DIP Facility.

E.      Consensual Use of Cash Collateral.  The Pre-Petition Lenders have consented to the Debtors' use of Cash Collateral in the ordinary course of business in accordance with the Agreed Budget, subject to the express terms and conditions set forth in this Interim Order.

F.      Good Cause for DIP Facility.  Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate need to obtain the DIP Facility and the interim relief sought in the Motion, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other

working capital and general corporate purposes of the Debtors.  The DIP Facility is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.  Accordingly, the Debtors and their estates will suffer immediate and irreparable harm unless the Debtors are immediately authorized to obtain the DIP Facility on the terms and conditions set forth in this Interim Order.

G.    No Alternative Sources of Financing.  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lender pursuant to, and for the purposes set forth in, this Interim Order and the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code without the Debtors granting the DIP Liens and the DIP Lender's Superpriority Claims, in each case on the terms and conditions set forth in this Interim Order and the DIP Documents.

H.    Reasonably Equivalent Value.   The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.  The Debtors require additional financing under the DIP Facility under the terms of this Interim Order in order to satisfy their postpetition liquidity needs.   After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of this Interim Order and the DIP Documents represents the best financing presently available to the Debtors.

I.    Good Faith.  The DIP Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors and the DIP Lender.  All DIP

Obligations have been, and shall be deemed to have been, extended by the DIP Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to, and are hereby granted, the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is stayed, vacated, reversed, amended or modified on appeal or otherwise.

NOW, based upon the Motion of the Debtors and the record before this Court, and good cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED** that:

**Cash Collateral Usage / Adequate Protection**

1.    <u>Disposition</u>.  The relief requested in the Motion with respect to the entry of this Interim Order is GRANTED on an interim basis, and any objections thereto that have not previously been withdrawn are hereby overruled.  Subject to the terms hereof, this Interim Order is valid immediately and fully effective upon its entry.  The use of Cash Collateral authorized hereunder shall expire on [December 10, 2009], unless this Court enters a further order approving the use of Cash Collateral on a final basis (in form and substance acceptable to the Pre-Petition Agent), in which event the use of Cash Collateral shall be as provided for in the Final Order.

2.    <u>Authorization to Use Cash Collateral</u>.  The Debtors are hereby authorized to use Cash Collateral in accordance with and subject to the terms and conditions of this Interim Order. The Debtors' right to use Cash Collateral under this Interim Order shall commence on the date hereof and expire on the date (the "<u>Termination Date</u>") that is the earliest to occur of: (i) [December 10, 2009], unless the Final Order shall have been entered; (ii) the third (3rd) business day following the delivery of written notice (which may be delivered by electronic mail) to the Debtors by the Pre-Petition Agent of the failure of the Debtors to comply with any of

the terms or conditions of this Interim Order; (iii) the dismissal of any of the Cases or conversion of any of the Cases to a chapter 7 case or appointment of a trustee or examiner with expanded powers; (iv) any stay, reversal, vacatur, rescission or other modification of the terms of this Interim Order not consented to by the Pre-Petition Agent; (v) and any Event of Default (as defined in the DIP Documents or this Interim Order) shall have occurred and any notice required pursuant to the DIP Documents to cause the DIP Obligations to become due and payable shall have been given, or the DIP Agreement shall otherwise have been terminated. In no event shall the Debtors be authorized to use the Cash Collateral for any purposes or under any terms other than those set forth herein, in the Agreed Budget, or as may otherwise be approved by this Court following notice and hearing as may be required.

      3.    <u>Carve-Out</u>.  "Carve-Out" shall mean:

      (a)    Amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (the "<u>Statutory Fees</u>");

      (b)    Any and all allowed fees and expenses of attorneys, accountants, financial advisors and other professionals retained in these Cases by the Debtors and by the Committee pursuant to section 327 or 1103 of the Bankruptcy Code (the "<u>Case Professionals</u>") which have actually been incurred but are unpaid as of the occurrence of an Event of Default or the Termination Date, provided that (i) such fees and expenses are approved by the Court or such lesser amount so approved and (ii) in no event shall any such fees and expenses exceed the respective amounts allocated for such Case Professionals in the Budget;

      (c)    Any and all allowed fees and expenses of Case Professionals (other than the Debtors' Investment Banker, if any), less the amount of any retainers then held by

such Case Professionals, after the occurrence of an Event of Default or the Termination Date in an amount not exceeding $300,000 in the aggregate; and

(d)     All unpaid and allowed fees (including transaction fees) of any investment banker that may be retained by the Debtors in these Cases (the "Debtors' Investment Banker"), the payment and allowance of which shall be (i) subject to the terms of any retention order entered by the Court and (ii) without duplication of any amounts that may be included in paragraph 3(b) above.

(e)     The obligations of the DIP Lender, the Pre-Petition Agent and the Pre-Petition Lenders, as applicable, with respect to funding of the Carve-Out, subject to the terms hereof, shall survive the occurrence of an Event of Default, the Termination Date or further expiration of this Interim Order.

(f)     Notwithstanding the foregoing, the Carve-Out shall not include, and the Cash Collateral, DIP Facility proceeds and the proceeds of the Pre-Petition Collateral and DIP Collateral (as defined below) shall not be used for the payment or reimbursement of any fees or disbursements of the Debtors, the Creditors' Committee or any trustee appointed in these Cases, or any substantial contribution expenses, any associated professional compensation, or any compensation for substantial contribution, incurred in connection with any challenge to the amount, extent, validity, perfection or enforcement of the Pre-Petition Obligations, the Pre-Petition Liens or the Pre-Petition Collateral securing repayment of the Pre-Petition Obligations or the assertion and prosecution of, or joinder in, any claim (as such term is defined in the Bankruptcy Code), counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, or commencing or prosecuting any action (whether arising under state law, the Bankruptcy

Code or other federal law) the purpose of which is to seek any order, judgment, determination or similar relief (i) asserting claims against the DIP Lender, the Pre-Petition Agent, or the Pre-Petition Lenders, including any such claims with respect to the liens and security interests securing, or any payment received on account of, the obligations of any of the Debtors under the DIP Documents, the Pre-Petition Loan Documents, or under this Interim Order or the Final Order; (ii) invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating, in whole or in part or taking or attempting to take any other action to render unenforceable, the DIP Obligations, DIP Liens and security interests in the DIP Collateral pursuant to the DIP Documents, this Interim Order or the Final Order; (iii) invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating, in whole or in part or taking or attempting to take any other action to render unenforceable, the Pre-Petition Lenders' or the Pre-Petition Agent's claims, liens, Senior Replacement Liens (as defined below) and security interests in the Pre-Petition Collateral pursuant to the Pre-Petition Loan Documents, this Interim Order or the Final Order; preventing, hindering or otherwise delaying the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the terms and conditions of this Interim Order; or (iv) seeking to amend or modify any of the rights granted to the DIP Lender under this Interim Order or the DIP Documents, in each case without such party's prior written consent given in its sole discretion.

(g)    Nothing contained in this paragraph 3 shall (i) be construed to exempt the Case Professionals retained in these Cases from receiving interim compensation payments or reimbursement of expenses in compliance with any Court-approved procedure for interim compensation or otherwise from applicable provisions of

bankruptcy law, including but not limited to requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and when applicable, any subsequent order of this Court requiring that such payments be disgorged, (ii) be construed as consent to the allowance of any fees and expenses referred to above, or (iii) be construed to affect any right of the DIP Lender, the Pre-Petition Agent or the Pre-Petition Lenders to object to the reasonableness or allowance of such amounts.

4.     <u>Pre-Petition Lenders' Adequate Protection</u>.   The Pre-Petition Agent and Pre-Petition Lenders are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Pre-Petition Collateral (including the Cash Collateral) to the extent that there is a diminution in the value of their interest in the Prepetition Collateral from and after the Petition Date and the imposition of the automatic stay.   As used herein, "diminution in value" or words of similar import shall mean any diminution in value of the Pre-Petition Collateral or the Dip Collateral from and after the Petition Date for any reason to the fullest extent allowed by law.   As adequate protection to the Pre-Petition Agent and the Pre-Petition Lenders for the use of Cash Collateral and any diminution in value of any other Pre-Petition Collateral or the Debtors' other assets and properties, from and after the Petition Date, the Pre-Petition Agent, for itself and on behalf of the Pre-Petition Lenders, is hereby granted continuing, valid, automatically perfected nonavoidable and enforceable security interests (the "<u>Replacement Liens</u>") equivalent to liens granted under section 364(c) of the Bankruptcy Code in and upon all of the assets of the Debtors, in existence prior to the Petition Date or created after the Petition Date, including, without limitation, all Cash Collateral, all of the Debtors' accounts, contract rights, inventory, machinery and equipment, licenses, general intangibles, real property

(including fee and leasehold interests), personal property, and such other property of the Debtors (excluding for purposes of this Interim Order actions for preferences, fraudulent conveyances and other avoidance power claims under sections 544, 545, 547, 548, 550, 552(b) and 553 of the Bankruptcy Code (the "Avoidance Actions")), whether such property was owned on the Petition Date or thereafter created, acquired or arising, and all improvements, additions and extensions thereto, all replacements thereof, all books and records with respect thereto and all products, proceeds, rents, revenues, income, offspring and profits of the foregoing (collectively, the "DIP Collateral").  The Replacement Liens shall be subject only to (i) the Permitted Liens, (ii) the Carve-Out, and (iii) any DIP Liens.

(a)      The Replacement Liens granted herein; (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Pre-Petition Agent and the Pre-Petition Lenders on the Petition Date; (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Interim Order without any further action by the Debtors, the Pre-Petition Agent, or the Pre-Petition Lenders, and without the necessity of the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, filings with the United States Patent and Trademark Office, mortgages or other documents; (iii) shall secure the payment of indebtedness to the Pre-Petition Agent and the Pre-Petition Lenders, as the case may be, in an amount equal to any diminution in value, to the fullest extent of the law, of the Pre-Petition Agents' and the Pre-Petition Lenders' Cash Collateral or any other Pre-Petition Collateral; (iv) shall not be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; and (v) shall not hereafter be subordinated to or made *pari passu* with any other

lien or security interest (other than the Permitted Liens and the DIP Liens) arising after the Petition Date, under section 364(d) of the Bankruptcy Code or otherwise, absent the consent of the Pre-Petition Agent and the Pre-Petition Lenders.

(b)     In addition to the Replacement Liens granted pursuant to this Interim Order, the Pre-Petition Agent and the Pre-Petition Lenders are hereby granted a super-priority and allowed administrative expense claim under sections 503(b)(1), 507(a), and 507(b) of the Bankruptcy Code (the "Pre-Petition Lenders' Superpriority Claims").  Such Pre-Petition Lenders' Superpriority Claims shall be allowed against each Debtor and its respective estate and have priority in the Cases over all other administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 363, 364, 503, 506(i), 507, 546(i), 546(d) 726, 1113, or 1114 or any other provision of the Bankruptcy Code or otherwise, and shall be subject only to the Carve-Out, the DIP Lender's Superpriority Claims and any recoveries from Avoidance Actions.  The Pre-Petition Lenders' Superpriority Claims shall be deemed legal, valid, binding and enforceable claims and expenses against the Debtors and their estates, and not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Cases and any Successor Case (as defined below).  The Pre-Petition Lenders' Superpriority Claims shall be payable from, and have recourse to, any and all property and assets of each Debtor.

(c)     Notwithstanding anything in this Interim Order to the contrary (i) the Pre-Petition Agent reserves the right to assert claims for the payment of additional interest

calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the Pre-Petition Loan Documents and (ii) if, in accordance with applicable law, the Court allows any claim by the Pre-Petition Agent for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the Pre-Petition Loan Documents, or for the payment of any other amounts provided for in the Pre-Petition Loan Documents, such claim shall constitute an administrative expense and shall be paid in full in cash upon the effective date of any confirmed chapter 11 plan in any of the Cases.

5.      <u>Limitations under Section 552(b) of the Bankruptcy Code</u>.  At no time during the Cases shall the limitation permitted by section 552(b) of the Bankruptcy Code, based on the equities of the case, on the extension of the liens and Replacement Liens to cover proceeds of the Pre-Petition Collateral be imposed on or against Pre-Petition Agent, the Pre-Petition Lenders or the Pre-Petition Collateral.

6.      <u>Cash Management</u>. All Cash Collateral shall be deposited by the Debtors into and maintained in the accounts described in the Debtors' cash management motion and order filed with and entered (or to be entered) by this Court in these Cases and such other accounts as are acceptable in form and substance to the Pre-Petition Agent (collectively, the "<u>Cash Collateral Accounts</u>"). The Cash Collateral, the Cash Collateral Accounts and use thereof shall be subject in all respects to the requirements and limitations set forth in the Debtors' cash management motion and order and bank accounts motion and order filed with and/or entered (or to be entered) by this Court in these Cases.

<b><u>DIP Facility</u></b>

7.      <u>Maximum Amount</u>.  The terms and conditions of the DIP Agreement are hereby approved on an interim basis.  The DIP Term Sheet is hereby approved and incorporated herein by reference.  The Debtors are authorized to execute, enter into and perform the transactions contemplated by this Interim Order and the DIP Documents (including the DIP Term Sheet) and to borrow under the DIP Agreement up to an aggregate principal amount of **[$10,000,000]** for general corporate purposes of the Debtors, and to pay certain costs and expenses of administration of the Cases pursuant and subject to the terms and conditions of this Interim Order and the DIP Documents.  For purposes of this Interim Order, the term "<u>DIP Obligations</u>" shall mean and include all amounts owing under the DIP Agreement or other DIP Documents (including, without limitation, all "Obligations" as defined in the DIP Agreement) and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other reasonable and documented fees, costs and expenses that are chargeable by or reimbursable to the DIP Lender under this Interim Order, the DIP Agreement or other DIP Documents), and any indemnity claims, in each case whether contingent or otherwise and whether arising before or after any "Event of Default" under the DIP Agreement.

8.      <u>Further Assurances</u>.  In furtherance of the foregoing and without further notice, motion or application to, order of, or hearing before, this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and reasonably required or necessary for such Debtor's performance of its obligations under the DIP Documents or this Interim Order, including without limitation:

> (i)      The execution and delivery of, and performance of the transactions contemplated by, the DIP Documents;

> (ii)     The execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under

the DIP Documents, in each case in such form as the Debtors and the DIP Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents; <u>provided</u>, <u>however</u>, that a copy of any such amendment or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and counsel to the Creditors Committee, if one has then been appointed in these cases, each of whom shall have three (3) business days from the date of such notice within which to object in writing to such modification or amendment.  If any such party timely objects to such proposed modification or amendment, then such modification or amendment shall only be permitted pursuant to an order of this Court;

(iii)    The payment to the DIP Lender of the DIP Obligations as and when due as set forth in this Interim Order or the DIP Documents; and

(iv)    The prompt performance of all other acts required under or in connection with this Interim Order or the DIP Documents, including, without limitation, prompt delivery to the DIP Lender (and its respective professionals) of such reporting and financial information and access to the Debtors' books and records, in each case, as may be reasonably requested by the DIP Lender from time to time.

9.    <u>No Impairment</u>.  Upon execution and delivery of the DIP Term Sheet, the DIP Agreement and the other DIP Documents, such DIP Documents shall constitute valid and binding obligations of the Debtors, be enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Documents and shall be incorporated by reference as part of this Interim Order.   No obligation or liability owed, or payment, transfer or grant of security, to the DIP Lender under this Interim Order or any DIP Document shall be stayed, restrained, impaired, disgorged, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Cases or any other

subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if any of the Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "Successor Case").  The DIP Obligations, once paid by the Debtors, shall be non-refundable.

      10.    <u>Interest, Fees, Costs and Expenses</u>.  The DIP Obligations shall bear interest at the rates (including at the default rate specified in the DIP Agreement after the occurrence of an Event of Default (as defined in the DIP Agreement)), and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.  The Debtors shall pay all DIP Obligations as and when the same shall become due under the terms of the DIP Documents, in each case whether or not such amounts are included in the Agreed Budget or arose before or after the Petition Date.  None of the fees, costs and expenses payable to the DIP Lender in connection with the Cases or the DIP Documents, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of the consultants, and the out-of-pocket expenses shall be subject to separate approval by this Court.  The DIP Lender shall provide to the Debtors, the U.S. Trustee and counsel to the Committee, on a monthly basis, the total amount of professional fees and expenses incurred per calendar month in the Cases, along with redacted invoices relating to such fees and expenses, and the Debtors shall pay the amounts reflected in such invoices to the DIP Lender absent written objection provided to the DIP Lender and its counsel with five (5) days of receipt of such invoice.  Any unresolved objection shall be resolved by the Bankruptcy Court after notice and hearing.  Under no circumstances shall professionals for the DIP Lender or the Pre-Petition Agent be required to file

any interim or final fee application or otherwise comply with the U.S. Trustee fee guidelines. The Debtors shall indemnify the DIP Lender (and other applicable parties) to the extent set forth in the DIP Documents.

11.     <u>Guarantors; Pledgors</u>.  Each Debtor hereby agrees that such Debtor is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to the DIP Lender and its successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all time thereafter) and performance of, all DIP Obligations owed or hereafter owing to the DIP Lender by each other Debtor.  Each such Debtor agrees that (a) its guaranty obligation hereunder is a present and continuing guaranty of payment and performance and not of collection, (b) its obligations under this Interim Order and any DIP Document shall not be discharged until the payment and performance, in full, in cash of the DIP Obligations, and the termination of the lending commitments under the DIP Documents, has occurred; and (c) its guaranty obligations hereunder shall be, and are, absolute and unconditional for all purposes in these Cases and any Successor Case.  In no event shall any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon the DIP Lender by the terms of the DIP Documents or this Interim Order, unless and until such time as all of the DIP Obligations have been indefeasibly paid in full in cash and all lending commitments have been terminated under the DIP Facility.

12.     <u>Authorized Signatories</u>.  The signature of any officer of the Debtors appearing on any one or more of the DIP Documents shall be sufficient to bind the respective Debtors and their estates thereto.  No board of directors, member, shareholder or other approval or resolutions

shall be necessary or required to consummate, effect or validate the transactions contemplated in the DIP Documents or in this Interim Order.

13.     <u>Permitted Use</u>.

(a)     *Generally*.  Notwithstanding anything in this Interim Order to the contrary, the Debtors may use the proceeds of the DIP Facility, and incur DIP Obligations, solely in accordance with and pursuant to terms and conditions set forth in the DIP Documents and this Interim Order, including, without limitation, pursuant to the Agreed Budget, but in all events only until the occurrence of the Termination Date and regardless of whether the Debtors have expended the entire proceeds of the DIP Facility permitted by the terms of this Interim Order prior to the Termination Date.  Notwithstanding the foregoing, if the DIP Lender in its sole discretion advances funds or provide other extensions of credit to the Debtors in excess of the terms and conditions of this Interim Order (or any other limitations in the DIP Documents, including, without limitation, the Agreed Budget), such advances and extensions of credit shall be entitled to, and are hereby granted, the rights, priorities, benefits and protections of this Interim Order.

(b)     *No Duty to Monitor Compliance*.  The DIP Lender may assume the Debtors will comply with this Interim Order, the Agreed Budget and the DIP Documents and shall not (i) have any obligation with respect to the Debtors' use of proceeds of the DIP Facility; (ii) be obligated to ensure or monitor the Debtors' compliance with the terms and conditions of this Interim Order or any DIP Document or (iii) be obligated to pay (directly or indirectly from the DIP Collateral) any expenses incurred or authorized to be incurred pursuant to this Interim Order or any DIP Document or be obligated to ensure or monitor that sufficient proceeds of the DIP Facility exist to pay such expenses.

14. <u>DIP Liens</u>.

(a)     <u>*Generally*</u>.  As security for the full and timely repayment of all of the DIP Obligations, the DIP Lender is hereby granted by each Debtor, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected security interests and liens (collectively, the "<u>DIP Liens</u>") in and upon the DIP Collateral, subject in all respects to the Carve-Out.

(b)     <u>*Other Priority Matters*</u>.  Notwithstanding anything in this Interim Order to the contrary, the DIP Liens shall, subject in each case to the Carve-Out:

> (i)     pursuant to section 364(c)(2) of the Bankruptcy Code, constitute valid, binding, continuing, enforceable, fully-perfected first priority security interests in and liens on all DIP Collateral that is not otherwise subject to any Permitted Lien and the Pre-Petition Liens;

> (ii)    pursuant to section 364(c)(3) of the Bankruptcy Code, constitute valid, binding, continuing, enforceable, fully-perfected junior security interests in and liens on all DIP Collateral that is subject to Permitted Liens, which security interests and liens shall be junior to such Permitted Liens;

> (iii)   pursuant to section 364(d)(1) of the Bankruptcy Code, constitute valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interests in and liens on all DIP Collateral, which security interests and liens (subject only to any

Permitted Liens) shall be *pari passu* in all respects with the Pre-Petition Liens.

The DIP Liens shall, as of the Petition Date, be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Cases and any Successor case, in each case without the necessity of the execution or delivery by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any DIP Collateral. Except for the Carve-Out and as otherwise provided herein, no other claims (as such term is defined in the Bankruptcy Code) liens or security interests, whether for postpetition financing, adequate protection or otherwise, whether arising pursuant to sections 363 or 364 of the Bankruptcy Code or otherwise, shall be senior or equal to or *pari passu* with the DIP Liens in these Cases or any Successor Case without the express written consent of the DIP Lender (which consent may be withheld in the DIP Lender's sole discretion).  The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (iii) any intercompany or affiliate liens of the Debtors.

15.    <u>Collateral Rights</u>.  Unless the DIP Lender has provided its prior written consent or all DIP Obligations have been indefeasibly paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), and all

commitments to lend have terminated, there shall not be entered in the Cases, or in any Successor case, any order that authorizes any of the following:

(a)     except as permitted in the DIP Documents, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Lender;

(b)     relief from stay by any person other than the DIP Lender with respect to the foreclosing on all or any portion of the DIP Collateral; or

(c)     the Debtors' return of goods constituting DIP Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Documents.

16.     <u>Perfection of DIP Liens</u>.

(a)     If the DIP Lender hereafter requests that the Debtors execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under this Interim Order, then the Debtors are hereby authorized and directed, at their sole cost and expense, to promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Lender is hereby authorized to file or record such documents in their respective discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order, but with the priorities as set forth herein.

(b)     The DIP Lender may (in its sole discretion), but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of the DIP Lender's interests in the DIP Collateral at the time and on the date of entry of this Interim Order, but with the priorities as set forth herein.

(c)     To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created under or in connection with this Interim Order or the DIP Documents, or otherwise would impose filing or registration requirements or fees and charges with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court; provided that the DIP Lender may still take such steps as it deems advisable to perfect its security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Interim Order.

(d)     Except as otherwise expressly provided herein, notwithstanding anything to the contrary contained in any prepetition or post-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated or bound, any provision therein that restricts, conditions, prohibits, limits or impairs in any way any Debtor from granting the DIP Lender the postpetition claims, security interests or liens upon any of its assets, properties or other DIP Collateral or otherwise entering into and complying with all of the terms, conditions and provisions of

this Interim Order and DIP Documents shall be unenforceable against such Debtor, and therefore, shall not adversely affect the validity, priority, perfection or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to such parties pursuant to this Interim Order and DIP Documents.

17.    <u>Super-Priority Claims</u>.  In addition to the DIP Liens, the DIP Lender is hereby granted, for all DIP Obligations, an allowed super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "<u>DIP Lender's Superpriority Claims</u>") against each Debtor and its respective estate.  Except for the Carve-Out and any proceeds realized from the Avoidance Actions, the DIP Lender's Superpriority Claims shall have priority in the Cases over all other administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, costs and expenses of administration of any kind (and no cost or expense of administration shall be senior to, equal to, or *pari passu* with, the DIP Lender's Superpriority Claims), including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise, in each case whether incurred in these Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, including, without limitation, the Pre-Petition Lenders' Superpriority Claims, and whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  The DIP Lender's Superpriority Claims shall be deemed legal, valid, binding, and enforceable claims and expenses against the Debtor and their estates, and not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Cases and any Successor Case.   The DIP Lender's

Superpriority Claims shall be payable from, and have recourse to, any and all property and assets of each Debtor, subject to the Carve-Out and any proceeds realized from Avoidance Actions. Except for the Carve-Out, no claims having an administrative priority senior to or *pari passu* with the Super-Priority Claim shall be granted while any portion of the DIP Obligations remain outstanding, absent express written consent of the DIP Lender given in accordance with the DIP Documents (which consent may be withheld in its sole discretion).

18.     Agreed Budget.  Pursuant to the terms and conditions of this Interim Order, the DIP Facility and the DIP Documents, and in accordance with the Agreed Budget (as the same may be modified from time to time with the express written approval of the DIP Lender and consistent with the terms herein), the Debtors are authorized to use Cash Collateral and advances under the DIP Documents during the period commencing immediately after the entry of the Interim Order and terminating upon three (3) business days notice being provided by the DIP Lender to the Debtors that an Event of Default has occurred and is continuing, and the termination of the DIP Documents.  The Agreed Budget may be updated (with the consent and/or at the request of the DIP Lender) from time to time, provided that such updated Budget shall be in form and substance acceptable to the DIP Lender in its reasonable discretion, and the Debtors shall be required always to comply with the Agreed Budget and the DIP Documents pursuant to the terms of the DIP Facility.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Documents and in accordance with the Agreed Budget.

19.     Modification of Automatic Stay.

(a)      Except as otherwise provided in this Interim Order, including in paragraph 19(b) below, (x) the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby vacated as to the DIP Lender to permit it to perform the actions described in or permitted by this Interim Order, in each case without further notice, application or motion to, or order from the Court, and (y) neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit such party's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies afforded to it hereunder or in the DIP Documents regardless of any change in circumstances (whether or not foreseeable).  Consistent with the foregoing sentence, the DIP Lender is hereby granted leave to (i) receive and apply payments of the DIP Obligations and proceeds of the DIP Collateral, as applicable, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral provided by this Interim Order, (iii) charge and collect any interest (including at the default rate to the extent authorized herein), fees, costs and other expenses accruing at any time under this Interim Order or the DIP Documents and to the extent authorized herein, (iv) give the Debtors any notice provided for in this Interim Order or the DIP Documents and (v) upon the Termination Date, but subject to the last sentence of this paragraph, and in each case without further notice, motion or application to, order of, or hearing before, this Court:  (A) terminate the DIP Agreement and/or the other DIP Documents, (B) accelerate any or all of the DIP Obligations and declare such DIP Obligations immediately due and payable in cash, and/or (C) revoke the Debtor's right, if any, to use the DIP Collateral and proceeds of the

DIP Collateral on the consensual terms and conditions described in this Interim Order and/or proceeds of the DIP Facility.

(b)     Upon the Termination Date and three (3) business days prior written notice of such occurrence to respective counsel to the Debtors, the Committee, the Pre-Petition Lenders and U.S. Trustee, the DIP Lender shall be entitled to foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Documents, this Interim Order or applicable law in seeking to recover payment of the DIP Obligations.  In any hearing regarding any exercise of rights or remedies, the only issue to be determined and decided at such Court hearing is whether the Termination Date has occurred and is continuing, and the Debtors hereby waive any and all rights to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender set forth in this Interim Order or the DIP Documents.

20.     No Liability to Third Parties.   In making decisions to advance loans to the Debtors, in administering any loans, in approving any budget or in taking any actions permitted by this Interim Order or the DIP Documents, as applicable, the DIP Lender shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), and/or (ii) owe any fiduciary duty to any Debtor, its respective creditors

or its respective estate, and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

## **General Provisions**

21.     <u>Certain Restricted Payments</u>.  Except to the extent approved in writing by the DIP Lender, none of the Debtors shall pay from the Cash Collateral, from the proceeds of the DIP Facility or otherwise any administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code or any pre-petition unsecured claims (including pre-petition priority unsecured claims), in each case whether pursuant to section 105, 363, 365 or any other provision of the Bankruptcy Code or otherwise, other than as provided in an order entered by the court after notice and hearing authorizing the Debtors to pay certain prepetition claims, such order being reasonably satisfactory in form and substance to the DIP Lender.

22.     <u>No Lien Alteration</u>.  The receipt by the Debtors of any proceeds of DIP Collateral shall not, and shall not be deemed to, affect, alter or otherwise modify the validity, priority or perfection of any liens in and/or claims against such proceeds and such liens and claims shall continue to exist in and against such proceeds in the possession of the Debtors, in each case with the same validity, priority and perfection as existed immediately prior to such receipt by the Debtors.

23.     <u>Reservation of Rights</u>.  Payment of any amounts with respect to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the DIP Lender, the Pre-Petition Lenders or their respective agents or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral (or their respective claims against the Debtors).  Except with respect to payment of the Carve-Out, none of the DIP Lender, the DIP Agent, the Pre-Petition Lenders or their respective agents shall be responsible for the direct payment or reimbursement of any fees or disbursements of any

1742343v6                                      33

professionals (including Case Professionals) of the Debtors or the Committee (or of any other Person) incurred in connection with the Cases or any Successor Case, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay compensation to or to reimburse expenses of any Case Professionals retained in these Cases or any other Person. Nothing herein shall impair, or be construed to impair, the ability of any party to (i) object to any of the fees, expenses, reimbursement or compensation of the professionals retained in these Cases pursuant to section 327 or 1103 of the Bankruptcy Code or (ii) dispute the validity, priority, enforceability and perfection of the Permitted Liens.

24.     Effect of Stipulations on Third Parties.  (a) Subject to the reservation of rights set forth in this paragraph, the Debtors' stipulations, admissions, and waivers contained in paragraph **[C]** of this Interim Order, shall be binding upon the Debtors and their successors and assigns in all circumstances.  Notwithstanding anything herein to the contrary, for a period equal to the lesser of (a) sixty (60) days after the Petition Date and (b) the date of the confirmation of any plan of reorganization or liquidation in these Cases, the Committee and any other party in interest shall be entitled to investigate the validity, perfection and enforceability of the Pre-Petition Agent's liens and security interests held on behalf of itself and the Pre-Petition Lenders and the obligations arising under the Pre-Petition Loan Documents, or to assert any other claims or causes of action against the Pre-Petition Agent and Pre-Petition Lenders (the "Pre-Petition Investigation Termination Date").  If the Committee or any other party in interest determines that there may be a challenge to the liens or claims of the Pre-Petition Agent or the Pre-Petition Lenders by the Pre-Petition Investigation Termination Date, upon five (5) business days' written notice to the Debtors and the Pre-Petition Lenders, the Creditors' Committee or any other party in interest shall be permitted to file and prosecute an adversary proceeding related thereto, and

shall have only until the Pre-Petition Investigation Termination Date to file such adversary proceeding on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action.  If such action is not filed on or before the Pre-Petition Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the Pre-Petition Agent), the stipulations, admissions, and waivers contained in paragraph **[C]** of the Interim Order, and any consideration granted as adequate protection for the Pre-Petition Lenders in this Interim Order, shall be irrevocably binding on the Committee and all parties in interest in these Cases without further action by any party or this Court; <u>provided</u> further that any stipulations, admissions, and waivers contained in paragraph **[C]** of this Interim Order which are not specifically challenged in any such action shall nonetheless be binding and preclusive despite the initiation of an action challenging other stipulations admissions, and waivers.  During the period from the initiation of any such adversary proceeding by the Committee or any other party in interest challenging the liens or claims of the Pre-Petition Lenders through and until the entry of a final, non-appealable order in favor of the Committee or any other party in interest sustaining its challenge in such timely filed adversary proceeding, the stipulations, admissions, and waivers of the Debtors provided herein, and the relief afforded the Pre-Petition Agent and the Pre-Petition Lenders herein, shall continue to be binding and effective.  Unless the Pre-Petition Agent and the Debtors each consent in writing to an extension, the Pre-Petition Investigation Termination Date may not be extended.

25.    <u>Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender or an order of this Court), except for sales of the Debtors'

inventory in the ordinary course of business or except as otherwise provided for in the DIP Documents and this Interim Order or as approved by the Court.  Except as otherwise ordered by the Court, upon the closing of any sale or other disposition of the Debtors' assets (excluding sales of the Debtors' inventory in the ordinary course of business), all proceeds shall immediately and/or directly be paid to Amegy until all of the Pre-Petition Obligations and the DIP Obligations have been indefeasibly satisfied in full.  Nothing in this Order shall prejudice or otherwise limit or impair any and all rights of the DIP Lender, the Pre-Petition Agent and the Pre-Petition Lenders under section 363(k) of the Bankruptcy Code, which rights are expressly preserved.

26.     _Events of Default_.  The occurrence of any of the following events shall constitute an '_Event of Default_" under this Interim Order:

(a)     Failure by any of the Debtors to comply with any term of this Interim Order; and

(b)     The occurrence of any Event of Default as defined in the DIP Documents. Unless and until the DIP Obligations are irrevocably repaid in full, all commitments to lend have irrevocably terminated, and all DIP Obligations that survive termination obligations have been cash collateralized to the reasonable satisfaction of the DIP Lender, the protections afforded to the DIP Lenders pursuant to this Interim Order and under the DIP Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting the Cases into Successor Cases, and the DIP Liens and the DIP Super-Priority Claim shall continue in these proceedings and in any Successor Case, and such DIP Liens and DIP Super-Priority Claim shall maintain their priority as provided by this Interim Order.

27.    <u>Limitation Upon Additional Surcharges</u>.  In consideration of the treatment and priority afforded the Carve-Out hereunder, subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Agreed Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the Pre-Petition Agent, Pre-Petition Lenders, or the DIP Lender, their respective claims, or their respective collateral under section 506(c) of the Bankruptcy Code or otherwise (other than the Carve-Out), and the Debtors, on behalf of their estates in the Cases any Successor Case, waive any such rights.  It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with this Interim Order, each of the DIP Lender, the Pre-Petition Agent, and the Pre-Petition Lenders has relied on the foregoing provisions of this paragraph. Notwithstanding any approval of or consent to an Agreed Budget, nothing in this Interim Order, other than the Carve-Out, shall constitute or be deemed to constitute the consent by the DIP Lender, the Pre-Petition Agent, or the Pre-Petition Lenders, to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Agreed Budget) against such party, its claims or its collateral under section 506(c) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

28.    <u>Successors and Assigns</u>.  The provisions of this Interim Order shall be binding upon the DIP Lender, the Pre-Petition Agent and Pre-Petition Lenders (collectively, the "<u>Lender Parties</u>"), the Debtors and their respective successors and assigns, including any trustee appointed in these Cases, and shall inure to the benefit of the Lender Parties, the Debtors and their respective successors and assigns.

29.   <u>Subsequent Reversal or Modification</u>.   Based on the findings set forth in this Interim Order, in consideration for the financing provided under the DIP Facility and the consent to the priority of the DIP Facility and to use of Cash Collateral, the Lender Parties are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with respect to the DIP Obligations (and related DIP Liens, DIP Lender's Superpriority Claims and other rights, remedies and benefits), the Replacement Liens and the Pre-Petition Lenders' Superpriority Claims, in each case created or authorized by this Interim Order in the event that this Interim Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal.   If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, or if any order shall be entered by the Court converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing or closing any of the Cases or otherwise, such action will not affect the validity and enforceability of any lien, claim, superpriority or other protection authorized or created hereby in favor of any of the Lender Parties.   Notwithstanding any such reversal, stay, modification, vacatur or additional order, any lien, security interest, and superpriority claim granted by the Debtors in accordance with this Interim Order prior to the date hereof shall be governed in all respects by the original provisions of this Interim Order, and the Lender Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code and granted herein with respect to all such indebtedness, obligations, liabilities, liens, security interests, and superpriority claims.   The claims, liens, and security interests granted to the DIP Lender pursuant to this Interim Order shall maintain their priority, validity and perfection as provided by this Interim Order until all of the DIP Obligations are indefeasibly paid in full in cash and discharged in

accordance with the respective terms and conditions of this Interim Order and the DIP Documents.

30.   <u>Proofs of Claim</u>.   The Pre-Petition Lenders and the DIP Lender will not be required to file proofs of claim in the Cases or any Successor case.  The Pre-Petition Agent and the Pre-Petition Lenders are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) aggregate proofs of claim in the Cases or any Successor Case.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Lenders, the Pre-Petition Agent or the DIP Lender.

31.   <u>No Implied Waiver</u>.   The failure, at any time or times hereafter, of any Lender Party or Lender Parties to require strict performance by the Debtors of any applicable provision of this Interim Order (or, in the case of the DIP Lender, the DIP Documents) shall not waive, affect or diminish any right of such parties thereafter to demand strict compliance and performance therewith.  No delay on the part of any party in the exercise of any right or remedy under this Interim Order or the DIP Documents shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of any party under this Interim Order or the DIP Documents shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom such amendment, modification, suspension or waiver is sought.  The DIP Lender does not waive, and expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has or may have pursuant to any or all of the DIP Documents, the Bankruptcy Code, and/or under applicable law against or with respect to any Debtor and any other person or entity.  Except as expressly provided in this

Interim Order, the obligations of the Debtors, and the rights, remedies, and priorities of the DIP Lender arising under or in connection with this Interim Order, are in addition to, and are not intended as a waiver or substitution for, those granted to, or contained in favor of, such parties under any or all of the DIP Documents, the Bankruptcy Code and/or under applicable law.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Pre-Petition Agent or the Pre-Petition Lenders may have to bring or be heard on any matter brought before this Court.

32.     <u>Interim Order Governs</u>.  In the event of any conflict between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall control and govern to the extent of such conflict.

33.     <u>Final Hearing</u>.  The Final Hearing on the Motion is scheduled for [_____], 2009 at _____ _.m., before this Court.  If no objections to the relief sought in the Motion with respect to the Final Order are filed and served in accordance with this Interim Order, a separate Final Order may be presented by the Debtors and entered by the Court.

34.     <u>Adequate Notice</u>.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Local Rules.  Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties.  Any objection to the relief to be sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be <u>actually received</u> no later than 5 p.m. (prevailing central time) five business days prior to the Final Hearing by the following:  (i) counsel to the Debtors, King & Spaulding LLP, 1100 Louisiana, Suite 400, Houston, Texas  77002 (Attn:  Henry J. Kaim and

Mark W. Wege); (ii) the twenty largest unsecured creditors of the Debtors at the addresses set forth in the Debtors' petitions; (iii) counsel to the Pre-Petition Agent, Porter & Hedges, L.L.P., 1000 Main Street, 36th Floor, Houston, Texas  77002 (Attn:  James Matthew Vaughn); (iv) the U.S. Trustee; and (v) counsel to the Committee.

Dated: _____, 2009


_____
UNITED STATES BANKRUPTCY JUDGE