**EXHIBIT A**

## BIGLER LP

### Summary of Terms and Conditions of the Proposed
### Senior Secured Super Priority Debtor-In-Possession Credit Facility

      This Summary of Terms and Conditions of the Proposed Debtor-In-Possession Credit Facility does not purport to summarize all the terms, conditions, representations, warranties and other provisions with respect to the transactions referred to herein and is provided for discussion purposes only. This Summary of Terms and Conditions of the Proposed Debtor-In-Possession Credit Facility supersedes any proposed oral or written summary of terms or conditions regarding the subject matter hereof and made or dated prior to the date hereof, and does not constitute an offer, agreement, or commitment by Amegy Bank National Association (the "**Bank**") to enter into any transaction. Any such commitment (i) will be subject to completion of the Bank's credit approval process, (ii) will be subject to the execution and delivery of definitive loan documents reasonably acceptable to all parties and their respective counsel (the "**DIP Loan Documents**"), (iii) will be subject to the completion of legal and business due diligence and the Bank's satisfaction with the results thereof, and (iv) will assume the accuracy and completeness in all material respects of the information provided by or on behalf of the Debtors (as defined below). This Summary of Terms and Conditions of the Proposed Debtor-In-Possession Credit Facility is confidential and, without the consent of the Bank, may not be disclosed to any person or entity other than the Debtors' respective officers, directors, employees and professional advisors or as otherwise required by the Court (as defined below). This term sheet is proffered in the nature of a settlement proposal in furtherance of settlement discussions, and is intended to be entitled to the protections of Federal Rules of Evidence 408 and any other applicable statutes or doctrines protecting the use or disclosure of confidential information and information exchanged in the context of settlement discussions. The Bank reserves its right to terminate discussions regarding the subject matter of this term sheet at any time in their sole discretion, and without liability of any kind.

| | |
|---|---|
| **Debtors:** | Bigler LP (the "**Company**"), Bigler Land, LP, Bigler PetroChemical, LP, Bigler Terminals, LP and Bigler Plant Services, LP (collectively, the "**Debtors**" or each individually, a "**Debtor**" and, together with the guarantors (as defined below), if any, collectively, the "**Credit Parties**" or each individually, a "**Credit Party**") as a debtor-in-possession in a bankruptcy case to be filed under Chapter 11 of the Bankruptcy Code (individually, and collectively with any cases filed under Chapter 11 of the Bankruptcy Code for any other Credit Party, the "**Case**") with the U.S. Bankruptcy Court for the Southern District of Texas (Houston Division) (the "**Court**"). |
| **Guarantors:** | The DIP Facility (as defined below) will be fully and unconditionally guaranteed on a joint and several basis by each Debtor (as to the obligations of each other Debtor), Bigler Management, Inc., Bigler Chemical Management, LLC, Bigler PetroChemical Services Management, LLC, Bigler Specialty Oils Management, LLC, Bigler |

Plant Services Management, LLC, Bigler Terminals Management, LLC, Bigler HPIB Management, LLC, and all of the existing and future, direct or indirect subsidiaries of the Company, including (without limitation) Bigler Specialty Oils, L.P., Bigler Chemical, LP and Bigler High Purity Isobutylene, LP.

| | |
|---|---|
| **Administrative Agent:** | Amegy Bank National Association (in such capacity, the "**DIP Agent**"). |
| **Lender:** | The Bank and other lenders selected by the Agent (the "**DIP Lenders**"). |
| **Pre-Petition Credit Facility:** | The Credit Parties are currently indebted to the Bank (the "**Pre-Petition Debt**" on account of the obligations incurred pursuant to (i) that certain Loan Agreement, dated May 18, 2007, between the Company and the Bank (as amended, the "**Pre-Petition Loan Agreement**") (together with all other loan and security documents related to or executed in connection with the Pre-Petition Loan Agreement, the "**Pre-Petition Loan Agreement Loan Documents**") and (ii) that certain Amended and Restated Credit Agreement dated April 17, 2008 among the Borrowers and the Bank (as amended, the "**Pre-Petition Credit Agreement**") (together with all other loan and security documents related to or executed in connection with the Pre-Petition Credit Agreement, the "Pre-Petition Credit Agreement Loan Documents"). The Pre-Petition Loan Agreement and the Pre-Petition Credit Agreement are hereinafter referred to as the "Pre-Petition Credit Facilities", and the Pre-Petition Loan Agreement Loan Documents and the Pre-Petition Credit Agreement Loan Documents are hereinafter referred to as the "Pre-Petition Loan Documents." Pursuant to the Pre-Petition Loan Documents, the Pre-Petition Debt is secured by liens and security interests (the "**Pre-Petition Liens**") on substantially all the assets of the Credit Parties (the "**Pre-Petition Collateral**"). |
| **Type and Amount of DIP Facility:** | A first lien super priority senior secured credit facility (the "**DIP Facility**"), consisting of loans in an aggregate principal amount of up to $10,000,000 (the "**DIP Loans**"). |
| **Availability** | Upon satisfaction of all conditions precedent, the DIP Facility will be available to the Borrower as follows: |
| | (1)  an aggregate principal amount of up to $2,400,000 in DIP Loans between entry of the Interim Order (as defined below) and prior to entry of the Final Order (as defined below); and |
| | (2)  an aggregate principal amount of up to $10,000,000 in DIP Loans (less the aggregate amount of any DIP Loans made pursuant to clause |

(1) above) from and after entry of the Final Order (as defined below).

The proceeds of the DIP Loans may be used to fund the ordinary operating costs and expenses and working capital needs of the Debtors during the term of the DIP Facility in accordance with the applicable Approved Budget (as defined below) (including without limitation the reasonable costs and expenses of professionals in connection with the Case and the DIP Lender's costs and expenses); provided, however, that no portion of the proceeds of any DIP Loan may be used by any person (including any official committee of unsecured creditors appointed in the Case) to initiate or prosecute any action against the Bank or its officers, agents or affiliates, including without limitation any avoidance action, fraudulent transfer action, action to avoid, offset, subordinate, impair, prejudice or otherwise alter any claim or lien created in favor of the Bank in its capacity as a pre-petition lender to the Credit Parties or otherwise.  Amounts reflected in the applicable Approved Budget as being available to fund ordinary operating expenses and working capital needs of Bigler Specialty Oils, L.P. and Bigler Chemical, L.P. (the "**Non-Debtor Borrowers**") may be advanced by way of an intercompany loan from a Borrower to a Non-Debtor Borrower, which indebtedness shall be evidenced by appropriate documentation in form and substance acceptable to DIP Agent and pledged by the Debtors to the DIP Agent.

Drawings under the DIP Facility will be subject to compliance with the DIP Loan Documents.

**Maturity Date:**   Unless the DIP Facility is terminated earlier upon the occurrence of an Event of Default (as defined below), all commitments to provide loans under the DIP Facility will terminate and all loans outstanding thereunder shall be due and payable on the earliest to occur of (a) the effective date of the chapter 11 plan for the Debtors; (b) the consummation of the sale of all or substantially all of the assets of the Credit Parties (as determined by the DIP Agent in its reasonable discretion); (c) 30 days after the petition date if the Final Order has not been entered; and (d) six (6) months from the petition date (the "**Maturity Date**").

**Interest Rates:**   Calculated on a 360-day basis:

Current Rate: A floating rate equal to the 30-day LIBOR Rate, as determined from time to time by the Bank, plus 7.50%, provided that at no time would LIBOR be less than 2.50%;

Default Rate:  4.00% in addition to the Current Rate.

| | |
|---|---|
| **Facility Fee:** | A facility fee (the "Facility Fee") of 5.00% of the total commitments under the Credit Facility; 2.50% of which will be payable on the initial date on which DIP Loans are advanced to the Borrower (the "**Closing Date**") and 2.50% of which will be paid on the Maturity Date. |
| **Nature of Fees:** | All of the foregoing fees shall be paid in immediately available funds on their respective due dates and shall be fully earned when due and non-refundable when paid. |
| **Security:** | Subject to the Carve Out (as defined below), all loans and all other obligations under the DIP Facility will be (a) entitled to super priority administrative expense status pursuant to §364(c)(1) of the Bankruptcy Code with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 726 or any other provisions of the Bankruptcy Code and (b) secured by (i) a first priority perfected security interest and lien (subject to any prior permitted liens provided for in the DIP Loan Documents) pursuant to §364(c)(2) and §364(d) of the Bankruptcy Code in substantially all presently owned and hereafter acquired assets of the Credit Parties including without limitation accounts, instruments, documents, inventory, general intangibles, intellectual property, equipment, land, leasehold interests, improvements, pipelines, easements, other real property interests and other fixed assets (excluding, for purposes of the Interim Order, avoidance power claims of the Credit Parties under sections 544, 545, 547, 548, 550 and 551 of the Bankruptcy Code, and any avoidance actions brought pursuant to §549 of the Bankruptcy Code to recover any post-petition transfer of collateral); (ii) a first priority perfected security interest pursuant to §364(c)(2) and §364(d) of the Bankruptcy Code in 100% of the capital stock (or equivalent equity interests) of the Credit Parties; and (iii) a first priority perfected security interest and lien upon any and all proceeds of any of the foregoing; provided, however, that all such liens and security interests shall be *pasi passu* with the liens securing pre-petition loans and other obligations (the "**Pre-Petition Indebtedness**") made by the Bank to the Credit Parties and shall be subject to any valid, perfected, enforceable and unavoidable liens (A) existing as of the Petition Date or (B) pursuant to sections 546 and 362(b)(18) of the Bankruptcy Code which are permitted to exist under the Pre-Petition Loan Documents and that are otherwise senior to the Pre-Petition Liens in favor of the Pre-Petition Lenders securing repayment of the Pre-Petition Obligations (all of the above, the **"Collateral"**). |
| **Carve-Out:** | The term "**Carve Out**" shall mean an amount equal to (a) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), (b) all allowed |

but unpaid fees and expenses incurred by professionals (collectively, the "**Case Professionals**") of the Debtors and any Official Committee of Unsecured Creditors appointed in the case, in respect of allowances of compensation for services rendered or reimbursement of expenses awarded by the Court to the Case Professionals prior to the occurrence of an Event of Default or the Maturity Date, to the extent such fees and expenses are included in the Approved Budget, (c) all allowed but unpaid fees and expenses incurred by Case Professionals after the occurrence of an Event of Default or Termination Event in an amount not exceeding $300,000 in the aggregate, and (d) all allowed and unpaid fees (including transaction fees) of any investment banker retained by the Debtors; provided, however, that any such payment shall be subject to the terms of any retention order entered by the Court and shall be without duplication of any amounts payable pursuant to clause (b) or clause (c) above.

| | |
|---|---|
| **Payment Schedule:** | The entire principal amount of loans outstanding under the DIP Facility, together with all accrued but unpaid interest at the applicable rates, shall be due and payable on the Maturity Date, unless earlier payment is required from Mandatory Prepayments or following an Event of Default. |
| **Voluntary Prepayments:** | DIP may be prepaid in whole or in part without penalty. Once repaid, DIP Loans may not be readvanced. |
| **Mandatory Prepayments:** | Mandatory prepayments and commitment reductions shall be required to be made from net proceeds of asset dispositions (after satisfaction of priority debt secured by such assets), casualty and condemnation events, and the incurrence of indebtedness (not otherwise permitted under the DIP Loan Documents), in each case, upon terms to be agreed upon and subject to certain exceptions. |
| **Prepayment Application:** | Prepayments of the DIP Facility shall be applied in the following order: (i) first, to due and unpaid fees and expenses; (ii) second, to accrued interest; (iii) third, to the outstanding principal amount of loans under the DIP Facility; and (iv) fourth, to any remaining amounts due to the DIP Agent or the Lenders under the DIP Loan Documents. |
| **DIP Orders:** | Funding under the DIP Facility will be subject to entry of an order entered after a final hearing based on the standards prescribed in Bankruptcy Rule 4001(c) and other applicable law and that has not been reversed, modified, amended or stayed (the "**Final Order**"), (1) approving all aspects of the DIP Facility including, without limitation, the administrative expense super-priority of and the existence and priority of all liens securing the DIP Loan Documents and the rights, remedies and obligations thereunder, and (2) providing |

for such other protections of the obligations of Borrowers and the other Credit Parties to the DIP Agent or the DIP Lenders and the status of the lien priority thereof as the DIP Agent, and its counsel, at its option, deem necessary.  Borrowers may also seek entry of an order after an interim hearing (assuming satisfaction of the standards prescribed in Bankruptcy Rule 4001(c) and other applicable law) approving all aspects of the DIP Facility on an interim basis to the extent necessary to prevent immediate and irreparable harm (the "**Interim Order**").  The Interim Order, if entered, the Final Order and all other orders of the Bankruptcy Court authorizing or affecting any aspect of the DIP Facility and all related motions and pleadings seeking to modify, amend or otherwise affect the Interim Order or the Final Order filed on behalf of Borrower, shall (a) first be submitted to the DIP Agent, and its counsel, (b) be in form and substance acceptable to the DIP Agent, and its counsel, at its option, and (c) not be modified without the prior written consent of the DIP Agent or consent given by the DIP Agent in open court.  The Interim Order and Final Order are sometimes collectively referred to herein as the "**DIP Orders**."

The DIP Orders shall provide for usual and customary protections for the DIP Agent, the DIP Lenders and the Bank, including, but not limited to, (a) a waiver of any and all claims and causes of action of Borrower and Guarantor against the DIP Agent, the DIP Lenders and Bank, in its capacity as a pre-petition lender to the Credit Parties, and all of their respective agents, employees, officers, directors, participants and other representatives on account of the Pre-Petition Debt and Pre-Petition Loan Documents, including, but not limited to, any claims for preference, fraudulent conveyance or other claims arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection or avoidability of the secured claims of the Bank, (b) an acknowledgment by the Borrower and Guarantor and a finding by the Bankruptcy Court as to the amount of the Pre-Petition Debt of Borrower to the Bank and the validity of the liens for the benefit of the Bank on the Pre-Petition Collateral, (c) notice in the Interim Order of the Borrowers' and the other Credit Parties' intention to waive in the Final Order any right to assert a surcharge or other claim under Section 506(c) of the Bankruptcy Code subject to the Carve Out against any of the Collateral, and waiver of such rights in the Final Order, (d) a waiver of any right to assert or require marshalling of any Collateral, (e) relief from the automatic stay in the event of an Event of Default and at any time on and after the Maturity Date, and (f) preclusion of any post-petition financing on a priming basis or otherwise, other than the DIP Facility, unless such post-petition financing first satisfies both the DIP Facility and any Pre-Petition Debt or the DIP Agent, the Lenders and the Bank consent to

such financing.

Waivers provided in the DIP Orders shall be binding on all creditors and parties-in-interest, unless such creditor or party-in-interest, including, without limitation, any committee appointed in this Case, (i) shall have commenced an adversary proceeding or contested matter against the Bank for the purpose of challenging the validity, extent, priority, perfection, and enforceability of the Pre-Petition Debt or the Bank's claims or the liens and security interests in the Pre-Petition Collateral for the benefit of the Bank or otherwise asserting any claims or causes of action against the Bank on behalf of the Borrowers' estates, no later than sixty (60) days after the Petition Date and (ii) the Court rules in favor of the plaintiff or movant in any such timely filed adversary proceeding or contested matter. Any person or entity, including without limitation any committee, that fails to commence such an adversary proceeding or contested matter within such periods shall be barred from doing so.

**Conditions Precedent to Initial Funding Date:**

Usual and customary for transactions of this type, including, without limitation:

A)   The entry of the Interim Order, within 5 days after filing the motion seeking approval, on an interim basis, of the Credit Facility.

B)   The entry of the Final Order on or before December 10, 2009.

C)   The definitive documentation evidencing the Credit DIP Facility shall be prepared by counsel to the DIP Agent (in form and substance satisfactory to the DIP Agent) no later than the date of entry of the Final Order.

D)   Completion of all filings, agreements and recordings necessary to provide the DIP Agent, for the benefit of the Lenders and the DIP Agent, with perfected liens and security interests in the collateral and of the priority contemplated herein, including (without limitation) a control agreement with respect to each of the Debtors' cash and securities accounts in favor of the DIP Agent, in each case, in form and substance satisfactory to the DIP Agent.

E)   Satisfactory review by the DIP Agent of all motions, orders, and other pleadings or related documents to be filed or submitted to the Court in connection with the DIP Facility and the approval thereof.

F)      Satisfactory review by the DIP Agent of all first-day and related orders entered by the Court in the Case, including without limitation any and all cash collateral orders and related orders.

G)      All documents required to be delivered under the DIP Loan Documents, including resolutions, financial projections, customary legal opinions, corporate records and documents from public officials and officer's certificates shall have been delivered.

H)      The Credit Parties shall have paid to the DIP Lenders and the DIP Agent all fees and expenses due and payable on the Initial Funding Date.

I)      The Credit Parties shall have delivered to the DIP Agent and the DIP Agent shall have approved a 13-week budget showing detailed cash sources and uses on a weekly basis (the "**Initial Approved Budget**").

| | |
|---|---|
| **Conditions to All Borrowings:** | Conditions to borrowings shall be usual and customary for transactions of this type, including, without limitation: (a) no continuing default or continuing event of default shall exist; (b) the representations and warranties shall be true and correct in all material respects as of the date of each extension of credit except to the extent that such representations and warranties expressly relate to a prior date, in which case they shall be true and correct in all material respects as of such earlier date; (c) appropriate DIP Orders shall have been entered, which order shall not have been reversed, modified, amended or stayed, and shall otherwise be in full force and effect within 45 days of commencement of the Case; (d) receipt of a notice of borrowing from the Debtors, which shall contain a certification from the applicable officer of the Borrowers as to the matters in clause (a)-(c) and (e) and that cash held by the Debtors is less than the Threshold Cash Amount; and (e) compliance with the current Approved Budget. |
| **Representations and Warranties:** | To be agreed upon by the Debtors and the DIP Agent. |
| **Affirmative, Negative and Financial Covenants:** | To be agreed upon by the Debtors and the DIP Agent. |
| **Other Covenants:** | Other affirmative and negative covenants to be agreed upon by the Debtors and the DIP Agent, including without limitation: |

A)      On the Closing Date and no later than the Friday of each week thereafter, delivery to the DIP Agent and DIP Lenders of a pro forma rolling thirteen (13) week cash flow budget (the **"Approved Budget"**) for the Credit Parties on a consolidating basis, which Budget shall be prepared on a basis consistent with the Initial Budget and be reasonably satisfactory to the Agent and which shall (i) be updated to reflect the Credit Parties current projections and results, and (ii) contain a reconciliation of the actual results for the immediately preceding week period to the Budget for such immediately preceding week and a detailed explanation of all material variances from the Budget.

B)      the Company would grant access and cooperate with the DIP Agent's financial advisors and any other consultants engaged from time to time at the direction of the DIP Agent.

C)      Limitations on indebtedness, guarantees, liens (including a negative pledge by subsidiaries), investments, loans, mergers, permitted acquisitions, and transactions with affiliates.

D)      Limitations on asset sales, except sales of inventory in the ordinary course.

E)      Notice to the DIP Agent, within 2 days of any Debtor's first acquiring knowledge thereof, of events that could cause a material adverse change in projected revenue or material dilution of collateral value.

F)      Compliance with the following "milestones" (the "**Milestones**"):

i       on or before February 28, 2010, the Court shall have entered an order, in form and substance satisfactory to the DIP Agent, establishing bid procedures for the sale of all or substantially all of the assets of the Debtors and the Non-Debtor Borrowers to a stalking horse bidder or a higher and better bidder (the "**Sale**");

ii      on or before April 1, 2010, the Borrowers shall have conducted an auction (the "**Auction**") with respect to the Sale;

iii     within five (5) business days after successful completion of the Auction, an order shall have been entered by the Court, in form and substance satisfactory to the DIP Agent, approving the Sale.

| | |
|---|---|
| **Events of Default:** | Usual and customary for transactions of this type, including, without limitation: |

A)    failure to pay interest, principal or fees when due;

B)    any representation or warranty found to be materially incorrect;

C)    breach of any affirmative or negative covenant;

D)    dismissal of chapter 11 cases or conversion to chapter 7 cases;

E)    appointment of a chapter 11 trustee or an examiner with expanded powers to operate or control the business of the Credit Parties;

F)    granting of relief from automatic stay to permit foreclosure on any asset of any Credit Party;

G)    entry of any order, without the DIP Agent's prior consent, reversing, amending, supplementing, staying or vacating the Final Order;

H)    unpaid post-petition judgments;

I)    payment of pre-petition debt, other than as approved by the DIP Agent and the Court;

J)    the submission by the Credit Parties of any motion or other pleading attacking the validity or enforceability of any of the documents executed in connection with the Credit Facility or the Final Order;

K)    any default under any cash collateral order;

L)    the failure of the Credit Parties to obtain a Final Order prior to December 10, 2009;

M)    the grant of any super priority administrative expense claim or any lien which is pari passu with or senior to those of the DIP Agent and DIP Lenders;

N)    the entry of an order in the Case confirming a plan of reorganization that does not contain a provision for the termination of the Credit Facility and repayment in full in cash of all of the obligations under the Credit Facility and the pre-petition obligations of the Credit Parties to the Bank on or

before the effective date of such plan;

O) the making of any payments or the incurrence of expenses (individually or in the aggregate) on any line item in excess of 10% of the weekly budgeted amount for such line item listed in the Approved Budget for the relevant week;

P) the failure to satisfy any Milestone; and

Q) such other usual and customary Events of Default that are reasonably requested by the DIP Agent and DIP Lenders.

**Remedies:** Upon the occurrence of an Event of Default, the DIP Lenders may, at their option, terminate commitments under the Credit Facility, declare all amounts outstanding immediately due and payable and exercise remedies against any of the Collateral; provided, however that the DIP Agent and the DIP Lenders shall not exercise any remedies against the Collateral without first giving the Credit Parties, any official committees appointed in the Case and the United States Trustee at least three (3) business days prior written notice.

The Credit Parties shall waive any right to seek relief under the Bankruptcy Code, including, without limitation, under Section 105, to the extent such relief would restrict or impair the rights and remedies of the DIP Agent or the DIP Lenders set forth in the Final Order and in the DIP Loan Documents. In the event that any party requests a hearing seeking to prevent the DIP Agent or the DIP Lenders from exercising any of their rights and remedies that arise after an Event of Default, the sole issue before the Court at such hearing shall be whether an Event of Default has occurred and has not been cured. No other issue or argument shall be relevant to any opposition to enforcement of the DIP Agent's and DIP Lenders' rights.

**Assignments:** The DIP Lenders may sell, transfer, negotiate or assign to one or more of their affiliates or one or more banks or financial institutions a portion of its loans, rights and obligations under the DIP Loan Documents subject to the prior written consent of the DIP Agent and compliance with other limitations to be set forth in the DIP Loan Documents. The DIP Lenders will also have rights to sell participations, subject to customary limits on voting rights.

**Taxes, Reserve Requirements and Indemnities:** All payments are to be made free and clear of any taxes (other than franchise taxes and taxes on overall net income), imposts, assessments, withholdings or other deductions whatsoever.

**Indemnification;** (1) Customary and appropriate provisions relating to indemnity,

| | |
|---|---|
| **Expenses:** | expense reimbursement and related matters in a form reasonably satisfactory to the DIP Agent; and |
| | (2)  Reimbursement of due diligence and other fees and expenses of the DIP Agent and the DIP Lenders in connection with the DIP Facility. |
| **Choice Of Law:** | Except as governed by the Bankruptcy Code, the DIP Loan Documents will be governed by and construed in accordance with the laws of the State of Texas. |
| **Counsel to the DIP Agent:** | Porter & Hedges, L.L.P. |
| **Miscellaneous:** | This summary of terms and conditions does not purport to summarize all the conditions, covenants, representations, warranties and other provisions, which would be contained in definitive credit documentation for the DIP Facility contemplated hereby. |