

ENTERED
02/09/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | |
| BIGLER, LP; | § | Case No. 09-38188 |
| BIGLER LAND, LLC; | § | Case No. 09-38189 |
| BIGLER PETROCHEMICAL, LP; | § | Case No. 09-38190 |
| BIGLER PLANT SERVICES, LP; | § | Case No. 09-38192 |
| BIGLER TERMINALS, LP | § § | Case No. 09-38194 |
| Debtors. | § § | Chapter 11 |
| | § § § § | Jointly Administered Under Case No. 09-38188 |

**MEMORANDUM OPINION ON DEBTORS' APPLICATION UNDER 11 U.S.C. §§ 327 AND 330 FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY PARKMAN WHALING LLC AS A FINANCIAL ADVISOR**
[Docket No. 94]

### I. INTRODUCTION

This Memorandum Opinion is written to underscore this Court's concern about the fees sought by investment bankers in large Chapter 11 cases. This Court first addressed its concern about this issue in *In re Energy Partners, Ltd.*, 409 B.R. 211 (Bankr. S.D. Tex. 2009) and *In re Energy Partners, Ltd.*, No. 09-32957-H4-11, 2009 WL 2970393 (Bankr. S.D. Tex. Sept. 15, 2009) (denying motion for reconsideration). The Court now reiterates its views herein, albeit on a different type of fee than the one at issue in *Energy Partners*. In the case at bar, the issue is whether this Court should approve an application to employ an investment banking firm which insists on a "tail fee." It may well be that such a fee is the norm in the investment banking community. The Court wants to emphasize, however, that it will not approve requested terms of retention merely because the terms

are routine in the investment banking community. Greater justification needs to be given to obtain approval.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On October 30, 2009, Bigler, LP, Bigler Land, LLC, Bigler Petrochemical, LP, Bigler Plant Services, LP, and Bigler Terminals, LP (collectively, the Debtors) filed a voluntary Chapter 11 petition. [Docket No. 1.] Thereafter, on November 25, 2009, the Debtors filed Debtors' Application Under 11 U.S.C. §§ 328 and 330 for Interim and Final Orders Authorizing the Debtors to Retain and Employ Parkman Whaling LLC as Financial Advisor (the Application).[1] [Docket No. 94.] The pertinent fee terms proposed in the Application, as set forth in the engagement letter, are as follows: (a) a monthly fee of $25,000.00; (b) a financing transaction fee; (c) a restructuring transaction fee; and (d) a mergers and acquisitions fee. [Docket No. 94–2.] Importantly, the engagement letter with Parkman Whaling LLC (Parkman Whaling) contained a "Tail Period" provision (the Tail Period), which reads as follows:

> Parkman Whaling shall be entitled to the fees enumerated in any preceding subparagraph of this paragraph upon the earlier of (I) the occurrence, during the term, or within twelve (12) months after the date of termination, of this Agreement (such twelve month period being referred to as the "Tail Period"), of a Financing Transaction, a Restructuring Transaction, an M&A Transaction or other Transaction or (ii) the occurrence of any Transaction specified in any such subparagraph with respect to which an agreement to consummate such transaction was executed by the Company during the term or within the Tail Period.

[Docket No. 94–2.] Boiled down to its essence, this provision means that if the Debtors consummate a transaction within the twelve months after the termination of the Debtors' agreement with Parkman

---

[1] The Debtors and their affiliates are engaged in a variety of operations within the chemical, petrochemical, and marine terminal industries. Parkman Whaling LLC would, among other things, advise the Debtors as to potential mergers or acquisitions and the sale or other disposition of any of the Debtors' assets or businesses.

2

Whaling, Parkman Whaling receives a fee, regardless of whether it had anything at all to do with the consummated transaction. Stated differently, this paragraph provides for the possibility that Parkman Whaling would receive compensation from the Debtors' estate without having provided services that resulted in a tangible, identifiable, material benefit to the estate.[2] On December 2, 2009, in its Order, the Court authorized, on an interim basis, the retention of Parkman Whaling. [Docket No. 109.] On December 15, 2009, the Official Committee of Unsecured Creditors (the Committee) filed its Limited Objection to Debtors' Application Under 11 U.S.C. §§ 337 and 330 for Interim and Final Orders Authorizing the Debtors to Retain and Employ Parkman Whaling LLC as Financial Advisor (the OCUC Objection).[3] [Docket No. 126.] In the OCUC Objection, the Committee requested that Parkman Whaling's compensation be limited to only transactions in which it identified that transaction's counter-party—in effect, objecting to the Tail Period. That same day, Anthony Annunziato, the Ashley Elizabeth Scianna Arora Investment Trust and the Stephanie Elizabeth Scianna Investment Trust filed their Limited Objection to Debtors' Application Under 11 U.S.C. § 327 and 330 for Interim and Final Orders Authorizing the Debtors to Retain and Employ Parkman Whaling LLC as a Financial Advisor (the Annunziato Objection).[4] [Docket No. 127.] As with the OCUC Objection, the Annunziato Objection also took issue with the Tail Period.

---

[2] In the Fifth Circuit, to receive compensation, professionals hired in a bankruptcy case—here, an investment banking firm—must provide a tangible, identifiable, and material benefit to the estate. *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.)*, 157 F.3d 414, 426 (5th Cir. 1998).

[3] The Objection inadvertently refers to 11 U.S.C. § 337 in the title. It should have instead referred to 11 U.S.C. § 327.

[4] Anthony Annunziatio, the Ashley Elizabeth Scianna Arora Investment Trust and the Stephanie Elizabeth Scianna Investment Trust are each secured creditors in these jointly administered Chapter 11 cases..

On December 16, 2009, this Court held a hearing on the Application and the two objections thereto. H. Malcolm Lovett, Jr. (Lovett), the Chief Restructuring Officer of the Debtors, testified at the hearing; he was the only witness.[5] Lovett spent the first twenty years of his career working on Wall Street. [Dec. 16, 2009 hearing at 10:33:00. a.m.] For the last ten years, Lovett has served as a restructuring officer and a financial advisor for approximately thirty Chapter 11 cases in the Northern and Southern Districts of Texas. [Dec. 16, 2009 hearing at 10:33:19 a.m.] In seeking the retention of an investment bank, Lovett, on behalf of the Debtors, interviewed seven candidates. [Dec. 16, 2009 hearing at 10:33:48 a.m.] The range of the monthly fees amongst the various candidates ranged from $25,000.00 to $100,000.00. [Dec. 16, 2009 hearing at 10:34:51 a.m.]

Lovett testified that the Debtors selected Parkman Whaling for three primary reasons: (1) its experience in the energy and petrochemical business; (2) its experience in working with debtors; and (3) its fee and the structure of their engagement. [Dec. 16, 2009 hearing at 10:35:53 a.m.] Lovett testified that the fee structure with Parkman Whaling was heavily negotiated. [Dec. 16, 2009 hearing at 10:36:14 a.m.] While Lovett testified that Parkman Whaling's fees were competitive, he is not enamored with the Tail Period and attempted to negotiate this particular term out of the engagement letter. [Dec. 16, 2009 hearing at 10:37:41 a.m.] He testified that he was unsuccessful in his effort to eliminate the Tail Period. [Dec. 16, 2009 hearing at 10:37:56 a.m.] When asked if the Tail Period was reasonable in this case, he responded that the overall engagement with Parkman Whaling was competitive. [Dec. 16, 2009 hearing at 10:40:49 a.m.] In effect, Lovett was telegraphing to this Court that the proposed terms of retention are, when viewed as a whole, reasonable even though he is not enamored with the Tail Period itself.

---

[5] Lovett was a very credible witness, and the Court gives significant weight to his testimony.

After listening to Lovett's testimony and the arguments presented by the parties, this Court orally approved the Application on the record. [Dec. 16, 2009 hearing at 11:05:58 a.m.] On December 21, 2009, the Court issued its Final Order Authorizing Debtors to Retain Parkman Whaling LLC as Financial Advisor (the Final Order). [Docket No. 137.] In the Final Order, the Court granted the Application on a final basis and overruled the OCUC Objection and the Annunziato Objection. The Court now issues this Memorandum Opinion to memorialize its oral ruling.

### III. CONCLUSIONS OF LAW

**A.      Jurisdiction and Venue**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). The dispute arising from the Application, and the objections thereto, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Additionally, this proceeding is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") *De Montaigu v. Ginther (In re Ginther Trusts)* Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that an "[a]dversary [p]roceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.     Employment Under 11 U.S.C. § 327**[6]

Section 327(a) of the Bankruptcy Code authorizes a trustee—or, as in this case, a debtor-in-possession—to retain professionals subject to court approval. § 327 provides as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).[7]

It is the burden of the party who files the application to prove that the applicant should be retained. *Energy Partners,* 409 B.R. at 224 (citing *In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 318 (10th Cir. 1994) ("An applicant under § 327(a) has the burden of establishing by application and accompanying affidavit that its chosen professional is qualified.")). Therefore, in the case at bar, the Debtors had the burden at the December 16, 2009 hearing to prove by a preponderance of evidence that Parkman Whaling should be employed pursuant to the proposed terms, which are set forth in the engagement letter attached as an exhibit to the Application.

**C.     Based Upon the Testimony Adduced by the Debtors, the proposed terms for Retention of Parkman Whaling are Reasonable, particularly because the Application is brought under § 330.**

This Court has broad discretion in determining whether to grant approval of the Application. *See Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995). In exercising this discretion, this Court focuses on whether the proposed terms are reasonable. At first blush, this

---

[6] Reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code.

[7] This Court concludes that Parkman Whaling is both a disinterested person and does not hold or represent an interest adverse to the estate. Neither conclusion is at issue in this contested matter.

Court has concerns with the Tail Period because it provides an avenue for Parkman Whaling to receive a fee even though its services have not resulted in a tangible, identifiable, material benefit to the Debtors' estate. Given this possibility, this Court concludes that there is a presumption of unreasonableness in any proposed retention by a professional who requires a tail period in addition to the other requested categories of compensation—such as, for example, a monthly fee in a fixed amount.

In the case at bar, Lovett's very credible testimony overcomes the presumption of unreasonableness created by the Tail Period. Specifically, Lovett gave the following testimony to overcome this presumption: First, Lovett has years of experience as a chief restructuring officer. Second, he interviewed seven different investment banks. Third, the monthly fees of these investment banks ranged from $25,000.00 per month to $100,000.00 per month; and Parkman Whaling's monthly fee was the lowest. Fourth, Parkman Whaling has substantial experience dealing with entities engaged in the energy and petrochemical business. Fifth, Parkman Whaling has significant experience dealing with debtors. Finally, Lovett testified that the Debtors preferred the overall structure of the Parkman Whaling engagement. In sum, Lovett's extensive negotiations,[8] Parkman Whaling's overall fee structure, and the unique experience that Parkman Whaling brings to this case overcomes the presumption of unreasonableness created by the Tail Period.

---

[8] Lovett testified that the fee structure with Parkman Whaling was "heavily negotiated." In *Energy Partners*, this Court expressed dissatisfaction with such generalized and conclusory testimony. However, in *Energy Partners*, the Court was considering applications filed under § 328, which necessarily require heightened scrutiny because once an application is approved under § 328, the terms may not be revised except in extremely limited circumstances. In contrast, an application filed under § 330 does not require the same high level of scrutiny because the Court has greater discretion in awarding final fees under this section. In any event, aside from giving some generalized testimony, Lovett also provided some very specific testimony that is compelling. For example, he testified that Parkman Whaling's monthly fee of $25,000.00 is much lower than the monthly fees of the other investment banking firms whom he interviewed. Indeed, there is a huge difference between a monthly fee of $25,000.00 and a monthly fee of $100,000.00 (which was on the highest end of the range according to Lovett's testimony).

Moreover, the Court notes that unlike the investment bankers in *Energy Partners*, who sought retention pursuant to § 328, in the case at bar, the Debtors seek retention of Parkman Whaling pursuant to § 330. Accordingly, this Court does not have the heightened concern that it would otherwise have about opening the door for a professional to receive a fee when its services did not provide a tangible, identifiable, material benefit to the estate. *See, e.g., In re Mirant Corp.*, 354 B.R. 113, 128 (Bankr. N.D. Tex. 2006) ("The Court erred seriously in entering orders [approving retention of professionals under § 328] which left it so little discretion in assessing the work of the financial advisors."). In the case at bar, if Parkman Whaling ever seeks a fee based upon the Tail Period, this Court may still close the door on such a fee if the Court concludes that the services rendered by Parkman Whaling failed to provide a tangible, identifiable, material benefit to the Debtors' estates. This, the Court could not do if the Application had been submitted and approved pursuant to § 328.

## IV. CONCLUSION

In *Mirant*, the Honorable D. Michael Lynn of the Northern District of Texas Bankruptcy Court urged parties in complex Chapter 11 cases to carefully scrutinize the terms demanded by professionals—such as investment bankers—and challenge these professionals when they insist on unreasonable terms. *In re Mirant*, 354 B.R. at 128. In *Energy Partners*, this Court followed Judge Lynn's advice, and in so doing, denied the employment applications of two investment banking groups whose proposed terms of engagement were unreasonable. Now, in the case at bar, this Court is presented with another application which, pursuant to Judge Lynn's admonition, requires close scrutiny. And, just as this Court had concerns in *Energy Partners* about approving immediate payment of substantial non-refundable fees to investment bankers **before** they had provided any services that produced an identifiable, tangible benefit to the estate, so too does this Court have

similar concerns about presently approving future fees to investment bankers **after** they have provided services that may not have resulted in an identifiable, tangible benefit to the Debtors' estates. Unlike this Court's ruling in *Energy Partners*, however, this Court has decided to approve the terms of retention in this case. It does so because contrary to the record made in *Energy Partners*, here, a sufficient record was made to justify the retention terms; and, additionally, the Application was filed pursuant to 11 U.S.C. §§ 327 & 330, not § 328.

The Court's approval of the Tail Period in this case should not in any way be construed as a willingness to approve tail periods in all instances. This Court will continue to adhere to Judge Lynn's admonition to closely examine the retention terms proposed for investment bankers (among other professionals) in complex Chapter 11 cases, including terms that require the payment of tail fees during a tail period. Mere testimony from any applicant that tail fees are "standard in the industry" will not suffice. Greater justification will be necessary. Here, Lovett provided that greater justification. Accordingly, this Court approves the Application because the Court concludes that the Application contains terms which, when viewed as a whole, are reasonable.

For all the reasons set forth herein, the Application is approved. An order to that effect has already been entered on the docket.

Signed on this 9th day of February, 2010

Jeff Bohm
United States Bankruptcy Judge