

# PURCHASE ORDER

| HALGO, INC.<br>1944 POST OAK DRIVE<br>811 E. PLANO PARKWAY, SUITE 101<br>PLANO TX.<br>75074<br>UNITED STATES<br><br>ATTN: SHANE FREEMAN<br>PHONE: 972-690-8200 | SHIPPING ADDRESS:<br>BIGLER, LP<br>To Be Determined<br><br>Pasadena, TX<br><br>(Ph.) 281.878.1000 | DATE: 26-Feb-08<br>PROJECT: P0600510<br>PO: P0600510-0009<br>PO REV: 0<br>MR: 4033-01-01<br>PO TERMS: NET 30<br>INQ: P0600510-4033-01-01 |
|---|---|---|
| QUOTED SHIP DATE: | INCOTERMS: | SHIPPING POINT: | SHIP VIA: | FREIGHT TERMS: |

1. Bigler LP is issuing this Purchase Order for furnishing of goods and / or services as specified herein.

2. The complete Purchase Order consists of this document and the attachments as listed on page 2 of this Purchase Order.

3. The Purchase Order documents (attachments) shall be read and interpreted to give affect to all provisions.

4. · The validity and interpretation of this Purchase Order and legal relations of the parties to it shall be governed by the internal laws of the State of the issuing office and litigation arising out of this Purchase Order shall be brought in Federal or State courts of the State of the issuing office.

5. Purchaser is bound by this Purchase Order only when signed Acknowledgment / Acceptance is returned by Seller. Seller is bound when signed acceptance is returned or when Seller begins performance, whichever occurs first.

6. The Acknowledgment / Acceptance copy of this Order must be signed by an authorized representative; and returned within five (5) days after receipt of order via email or fax to:

   **ATTN: ED GROVER      EMAIL: ed.grover@akerkvaerner.com      FAX: 713-270-3650**

7. All terms and conditions of the original Purchase Order and any subsequent Change Order(s) remain the same unless otherwise stated.

8. **Notification of Readiness for Shipment (Refer to form PP-55, Paragraphs 17-20)**

9. Invoices shall be submitted by Seller to Aker Kvaerner for review and approval. Approved invoices will be forwarded by Aker Kvaerner to Bigler LP, along with Aker Kvaerner's approval route slip, and within thirty (30) days Seller's invoice invoices will be paid. Notwithstanding anything in this Purchase Order to the contrary, Seller acknowledges and agrees, absolutely and unconditionally, that payment is the responsibility of Bigler LP and is contingent upon and subject to Bigler LP's acceptance of Seller's performance of this Purchase Order .

BUYER'S
INITIALS:

AUTHORIZED
BY:

**Exhibit 2**



# PURCHASE ORDER

| HALGO, INC.<br>811 E. PLANO PARKWAY, SUITE 101<br>PLANO TX.<br>75074<br>UNITED STATES<br><br>ATTN: SHANE FREEMAN<br>PHONE: 972-690-8200 | SHIPPING ADDRESS:<br>BIGLER, LP<br>To Be Determined<br><br>Pasadena, TX<br><br>(Ph.) 281.878.1000 | DATE: 26-Feb-08<br>PROJECT: P0600510<br>PO: P0600510-0009<br>PO REV: 0<br>MR: 4033-01-01<br>PO TERMS: NET 30<br>INQ: P0600510-4033-01-01 |
|---|---|---|
| QUOTED SHIP DATE: | INCOTERMS: | SHIPPING POINT: | SHIP VIA: | FREIGHT TERMS: |

Improper compliance with vendor invoice address as shown may result in delayed payment.

**Remittance Address**
HALGO, INC.
9330 LBJ Freeway
Suite 150
Dallas, Tx.
75243
United States

<u>ORIGINAL</u> <u>Invoice To:</u>
**Bigler, LP**
Attn: Accounts Payable
1920 N. Memorial Way, Suite 201
Houston, Texas 77007

ATTN: **Accounts Payable**

<u>ONE (1) Copy of Invoice To:</u>
Aker Kværner Plant Services Group, Inc.
2801 E. 13th Street
LaPorte, TX 77571
ATTN: **Renee Turman**

10. Description of attachments:

| Attachment | Title | Form No. |
|---|---|---|
| 01 | Purchase Order Scope of Supply | PROC9002 |
| 02 | General Instructions | PP-55 |
| 03 | Special Instructions | PP-56 |
| 04 | Bigler, LP Purchase Order Terms & Conditions | |
| 05 | MR # 4033-01-01, Rev. 0 | |
| 06 | Vendor Document Requirement Schedule | DOC9904 |
| 07 | Supplier Stamp | Supplier Stamp.doc |
| 08 | Expediting Questionnaire | PP-08 |
| 09 | QA/QC Procedures | PP-10 |

PP-07 – Rev. 2, Dec. 2005

 **BIGLER**

# PURCHASE ORDER

| HALGO, INC.<br>811 E. PLANO PARKWAY, SUITE 101<br>PLANO TX.<br>75074<br>UNITED STATES<br><br>ATTN: SHANE FREEMAN<br>PHONE: 972-690-8200 | *SHIPPING ADDRESS:*<br>BIGLER, LP<br>To Be Determined<br><br>Pasedena, TX<br><br>(Ph.) 281.878.1000 | DATE: 26-Feb-08<br>PROJECT: P0600510<br>PO: P0600510-0009<br>PO REV: 0<br>MR: 4033-01-01<br>PO TERMS: NET 30<br>INQ: P0600510-4033-01-01 |
|---|---|---|
| QUOTED SHIP DATE:    INCOTERMS: | SHIPPING POINT:    SHIP VIA: | FREIGHT TERMS: |

## SPECIAL NOTES
## DO NOT DUPLICATE

1.  Scope of Supply to be in strict accordance with MR # 4033-01-01, Rev. 0.

2.  Prices are firm for duration of order - Not Subject to Escalation.

3.  Vendor Documents to be furnished in accordance with form **PP-55 Paragraph 3.**

4.  For proper processing, invoices must contain the following information:

    Project Number: P0600510

    PO Number: P0600510-0009

    MR Number: 4033-01-01

5.  Drawing Submittal Commitment:

    Drawings:    **(date)**   ARO.

6.  Progress Payments:
    a.  10% Upon order placement
    b.  20% upon drawing ssubmittal
    c.  30% Upon receipt of major materials
    d.  20% Upon Hydro of Boiler
    e.  15% Upon Shipment
    f.  5% Retainer released (Net 10) Upon completion of testing NTE 120 days after shipment.

PP-07 – Rev. 2, Dec. 2005



**PURCHASE ORDER**

| HALGO, INC.<br>811 E. PLANO PARKWAY, SUITE 101<br>PLANO TX.<br>75074<br>UNITED STATES<br><br>ATTN: SHANE FREEMAN<br>PHONE: 972-690-8200 | *SHIPPING ADDRESS:*<br>**BIGLER, LP**<br>To Be Determined<br><br>Pasedena, TX<br><br>(Ph.) 281.878.1000 | DATE: 26-Feb-08<br>PROJECT: P0600510<br>PO: P0600510-0009<br>PO REV: 0<br>MR: 4033-01-01<br>PO TERMS: NET 30<br>INQ: P0600510-4033-01-01 |
|---|---|---|
| **QUOTED SHIP DATE:**   **INCOTERMS:** | **SHIPPING POINT:**   **SHIP VIA:** | **FREIGHT TERMS:** |

# ACKNOWLEDGMENT / ACCEPTANCE

PLEASE SIGN AND RETURN THIS FORM VIA EMAIL OR FAX.

We acknowledge and accept this order subject to terms and conditions as stated herein.

Date: _3/4/08_                Seller's Order
                                 Number: _73841_

Firm
Name: _HALGO INC._

By: _(signature)_

PP-07 – Rev. 2, Dec. 2005

**AKER KVAERNER** | Client: BIGLER LP Confidential

Page 1 of 1

## Project P0600310
### BIGLER LP Confidential
### Purchase Order Scope of Supply

19 Feb 2008 10:22

Rev 0

PO No P0600310-P000     Title KPPH Boilers

| Item Seq | Tag/Part Number | Previous Quantity | Current Quantity | Description | Item Rev | Cost Code | Contract Delivery Date/ Delivery Point | Unit Price | Total Item Value | Ccy |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.000 | KPPH BOILER 1 | | 1.00 Ea | KPPH Boiler #1 | 0 | | | 1889962.00 | 1889962.00 | USD |
| 2.000 | KPPH BOILER 2 | | 1.00 Ea | KPPH Boiler 2 | 0 | | 20-AUG-08 | 1889962.00 | 1889962.00 | USD |
| 2.101 | L&P | | 1.00 EA | Ladders and Platforms for Boilers | 0 | | 20-AUG-08 | 66000.00 | 66000.00 | USD |
| 2.102 | SAMSTA | | 2.00 EA | Sample Stations for Boilers | 0 | | 20-AUG-08 | 12500.00 | 25000.00 | USD |
| 2.103 | VCVLV | | 2.00 EA | Vent Control Valve for Boilers | 0 | | 20-AUG-08 | 27000.00 | 54000.00 | USD |
| 2.104 | DEA | | 1.00 EA | Deaerator for Boilers | 0 | | 20-AUG-08 | 603078.00 | 603078.00 | USD |
| 2.105 | WSS | | 1.00 EA | Water Softner System | 0 | | 20-AUG-08 | 43500.00 | 43500.00 | USD |
| 2.106 | BBT | | 1.00 EA | Boiler Blowdown Tank | 0 | | 20-AUG-08 | 14975.00 | 14975.00 | USD |
| | | | | | | | TOTAL PO VALUE | | 4586957.00 | USD |

Report Ref: PROC9002 Rev: 9.08

PROC 9.6



## GENERAL INSTRUCTIONS
### PROJECT NO.  P0600510

---

1.  **CONTACTS:** The Purchaser whose name appears on page one of this order and/or the name that appears as the "Authorized Signature" are the only individuals authorized to add, delete, modify or place on hold equipment, materials or services on this order. Changes requested by any others are to be brought to the attention of the authorized individuals immediately. Failure to do so may result in forfeiture of all commercial considerations.

2.  **COMMUNICATIONS-COMMERCIAL/TECHNICAL:** All questions will be directed as follows:

    | | | |
    |---|---|---|
    | TECHNICAL: | COMMERCIAL: | ED GROVER |
    | TELEPHONE: | TELEPHONE: | 713-270-2619 |
    | FACSIMILE: 713-272-3910 | FACSIMILE: | 713-270-3650 |

    With copy or confirmations of telephone conversation to Purchasing, originator of the inquiry.

3.  **VENDOR DATA REQUIREMENTS:** _X_ Are required __ Not required - Furnish catalog cut sheets for each item with quotation.

    For Vendor Data Requirements, please refer to VDRS and Document Type Catalogue, DOC9904. Seller shall review this document, note any comments/changes and return the document with their proposal; failure to do so constitutes acceptance of drawing requirements and submittal times. Seller's transmittal of data shall include Purchaser's Purchase Order Number, Material Requisition Number, and Equipment Item Tag Number(s); In addition to the corresponding Document Type (i.e. A01) adjacent to each document submitted. Effective dates, when submittals are expected at destination are calculated from Purchase Order award date. No purchase order will be considered complete, and a retention of ten percent (10%) of the order total or $10,000 (whichever is less) will be withheld, until all requested data is received.

    **SELLER/SUPPLIER REVIEW STATUS STAMP:** The stamp below is to be applied to all drawings and documents issued by Seller/Supplier. The Seller/Supplier will receive the stamp via a word document along with the Purchase Order documents.

<table>
<tr><td rowspan="6" style="writing-mode:vertical-rl">TO BE COMPLETED BY SUPPLIER</td><td colspan="2">SUPPLIER DOCUMENT INFORMATION</td></tr>
<tr><td>Purchase Order No.</td><td>Issued For:<br>☐ Information<br>☐ Approval</td></tr>
<tr><td>Material Requisition No.</td><td>☐ Final (No Certification Required)<br>☐ Certified</td></tr>
<tr><td>Supplier Reference No.</td><td>☐ As Built</td></tr>
<tr><td>Document No.</td><td>AK VDRS Doc Type No.</td></tr>
<tr><td>Document Title</td><td></td></tr>
<tr><td>Tag No(s).</td><td></td></tr>
</table>

<table>
<tr><td rowspan="8" style="writing-mode:vertical-rl">TO BE COMPLETED BY AK</td><td colspan="2">AKER KVAERNER REVIEW STATUS</td></tr>
<tr><td colspan="2">Acceptance of this document by AK does not relieve Supplier of responsibility for accuracy of dimensions and strict compliance with the Purchase Order.</td></tr>
<tr><td>Checked by:</td><td>Date:</td></tr>
<tr><td>☐ Approved (A)</td><td>☐ Information only (I)</td></tr>
<tr><td>☐ Approved as Noted (B)</td><td>☐ Disapproved (D)</td></tr>
<tr><td>☐ Approved as Certified (C)</td><td>☐ Void (V)</td></tr>
<tr><td>☐ Approved as Final (F) (Certification Not Required)</td><td></td></tr>
<tr><td>☐ Superseded (S) by:</td><td></td></tr>
<tr><td>Date Recv'd:</td><td>Seq/Rev:</td></tr>
</table>

*PP-55-Rev 4, Nov, 2005*



## GENERAL INSTRUCTIONS
### PROJECT NO.  P0600510

**ACCEPTANCE STATUS CODES:** Review status acceptance codes will be assigned by Purchaser to documentation submitted for review and acceptance.

Seller shall include the Supplier Review Status Stamp (shown above) on all documents and drawings prior to issue for review and acceptance. Valid status codes and their definitions are as follows:

**A – Approved**
No corrections are required. Proceed with fabrication and ship in accordance with purchase order schedule. Submit certified drawings within seven (7) working days.

**B – Approved as Noted**
Proceed with fabrication as noted. Revise and resubmit within seven (7) working days.

**C – Certified**
Document has been reviewed and accepted as Certified. Manufacture or fabrication may proceed.

**F – Final**
Document has been reviewed and accepted as Final. Manufacture or fabrication may proceed.

**D – Disapproved**
Document is not acceptable and is not approved for fabrication. Revise and resubmit for approval within seven (7) working days.

**I – Information Only**
Document is for information only and does not affect design. No further submittal by the vendor is required.

**S – Superseded**
Document has been superseded by another vendor document. The RE must indicate the number of the superseding document.

**V – Void**
Document is no longer required for the design of the project.

**APPROVAL DOCUMENTATION:** All approval documentation should be submitted electronically. (Drawings as "-.dwg", "-.dgn" or "-.pdf" format. All other approval documentation as "-.pdf").

**FINAL DOCUMENTATION:** All final documentation should be submitted electronically in "-.pdf" format. In addition to "-.pdf", all drawings should be submitted in "-.dwg" or "-.dgn" format.

All submitted data is to be emailed to:  **ATTN:**
                                          **EMAIL:** DocCtrl.Bigler@akerkvaerner.com

4.   **MATERIALS/SUBSTITUTIONS:** The material and/or equipment must all be new and unused. Any use of any reworked or repaired materials without our consent will be rejected. The Seller will not make any changes (including upgrading of materials) to materials of construction without the prior approval of the Purchasing Department. Materials substituted without our permission will be a cause for rejection. Foreign materials of manufacture must be approved prior to purchase.

If Purchaser receives anything other than new material from the Seller, Purchaser may return same for full credit and purchase from another source of supply. If the cost of the replacement is greater than the cost shown on this purchase order, the difference shall be for Seller's account.

*PP-SS-Rev 4, Nov, 2005*



## GENERAL INSTRUCTIONS
PROJECT NO.  P0600510

5. **SUBLETTING OF WORK:** No subletting of work is authorized against this purchase order without the prior approval of Purchaser.

Seller is to submit the names and locations of major material or component subsuppliers and include a forecast of lead times for subordered equipment/material.

The performance of the Sellers and quality of all equipment/ material and technical data supplied by subsuppliers for this purchase order will be the responsibility of the Seller.

6. **CHANGES:** The Seller will not make any changes to material of construction or the fabrication of equipment on this order, effecting price or delivery, without the prior written approval of Purchaser's Purchasing Department.

7. **SUBORDERS:** Your quotation must identify the major items of material that will be procured from outside sources including the manufacturers' names. Purchaser will approve all Sellers' subsuppliers prior to subletting of work. In addition to the inspection requirements as shown herein, the successful Seller is to provide Purchaser with two (2) unpriced copies of all suborders. These suborders must contain all qualifications and specifications as required by the purchase order, including Purchaser's purchase order number, material requisition number, item number, tag number or identification number applied to the proper item and delivery promise. The successful Seller shop order number and origin of fabrication all shown in a prominent place on the face of the suborder. In addition, provide a complete list and delivery status of all suborders each month.

> X   Required        Not Required

**NOTE:** All material and equipment listed on this purchase order will be subject to Expediting/Inspection at your or your sub-suppliers facilities. The following paragraph must appear on all orders to sub-suppliers supplying material in the event of an order:

> *"Purchaser, or it's designated representative, shall have the right at all times to conduct expediting/inspection at their option. Please give your company's representative a minimum of five (5) days advance notice when items will be ready for inspection. Your company's representative will notify Purchaser that materials are ready to inspect."*

8. **WELDING PROCEDURES:** In the event the successful Seller intends to perform any welding in connection with an order, the successful Seller's welding procedures and their qualification test results must be submitted for approval. If your subsuppliers are supplying any material to you for this purchase order in a welded condition, the above will also apply to them and procedures and test results from your subsuppliers also must be submitted as soon as possible for our approval.

Absolutely no welding is to be done, either by you or your subsuppliers, until the procedures and their qualification test results have been approved by Purchaser.

9. **ASSEMBLY:** It is compulsory that all equipment be fabricated and assembled to the largest transportable sections and delivered to job site complete and ready for installation.

10. **INSPECTION REQUIREMENTS:** In the event you are the successful Seller and inspection is required, refer to Paragraph 2 of our "Terms and Conditions" and inspection criticality identified in the VDRS (Vendor Document Requirements Schedule DOC9904).

It may be necessary that the successful Seller furnish Purchaser's Inspector, or designated representative, all Approved or Approved As Noted Drawings; also, Approved or Approved As Noted Welding Procedures.



## GENERAL INSTRUCTIONS
### PROJECT NO.  P0600510

It will be necessary to provide Purchaser's Inspector, or designated representative, with one (1) copy of inspection related documents, such as code data packages (vendor data book), mill test certificates, test reports, heat charts, performance data, pressure recording charts and any N.D.T. reports prior to shipment.

On orders subject to inspection, the successful Seller will secure an Inspection Release Notice from Purchaser, or its designated inspection representative, prior to release of any shipment.

This order and all suborders are subject to inspection and expediting by the Purchaser or its designated representative. A notification of a minimum of five (5) days prior to the scheduled inspection date shall be required. Also, unpriced copies of suborders are to be available to the Inspector upon request.    The Seller to notify:

QUALITY REPRESENTATIVE:  SANDY GILLEN     TELEPHONE:   (713) 270-2883
                                                               FACSIMILE:   (713) 270-2775

11.  **SUPPORT FACILITIES:**  Seller shall make available to Purchaser or it's designated representative at no cost, sufficient office space to enable the Inspector/expediter to perform his daily administrative responsibilities, which includes the use of telephone/facsimile service (for placing of collect calls) if required.

12.  **BACK CHARGES FOR FIELD REWORK:**  The Seller must advise Purchaser within forty-eight (48) hours of notification, as to his intent to correct the error or acceptance of back charge. Failure to comply within the indicated time limit will constitute acceptance of back charge.

13.  **GENERAL TAGGING AND MARKING INSTRUCTIONS:** All equipment and materials to be furnished by Seller or his supplier on a resulting order are to be marked with Purchaser's purchase order number, material requisition number, item number, tag number or identification number.  All items shall be tagged with stainless steel tags which are to be permanently affixed after painting or seal welded prior to painting.  Seller's failure to comply with the above instructions, where it causes excessive field receiving problems, may result in BACK CHARGES against the Seller.

All boxes, crates, bundles, skids, etc., shall be marked with water-resistant paint with the following:

    -PROJECT NO.         -TAG NO./CLIENT I.D.
    -P.O. NO.            -BOX NO. ___ OF
    -MR NO.              -TOTAL WEIGHT
    -ITEM NO.

The Seller's failure to comply with the individual tagging and marking instructions, where it causes excessive field receiving problems, may result in BACK CHARGES against the Seller.

14.  **SHIPPING PREPARATIONS:**  All items covered by this order shall be properly packaged, boxed or containerized to protect against damage in shipment.  Any damages due to improper shipping preparation and packing shall be back charged against the Seller.

Because of the construction program, equipment may be stored in an unprotected outdoor environment or erected in place with the same conditions for an extended period of time prior to being put into operation.  Therefore, special instructions shall be provided by the Seller covering, in detail, the proper care after delivery.

15.  **PRELIMINARY TRAFFIC INFORMATION:**  On all shipments requiring clearance, the Seller is to supply Purchaser with loading diagrams or plans, (domestic two (2) months and foreign four (4) months), prior to any expected shipping date, attention: Traffic/Expediting Department.

*PP-55-Rev 4, Nov, 2005*


# BIGLER

## G E N E R A L   I N S T R U C T I O N S
### PROJECT NO.   P0600510

16.   **WAREHOUSING OF MATERIALS:** No shipment shall be made to the job site by the Seller until notified, in writing by Purchaser.

It is further agreed that upon receipt of material at Seller's warehouse, Purchaser will honor an invoice for payment upon receipt of same, substantiated by manufacturer's packing list and/or verification of receipt by Purchaser or its designated representative.

17.   *SHIPPING RELEASE:  Seller shall contact purchaser for final instructions prior to each shipment, Seller shall advise shipping weight and dimensions for each piece.  Purchaser will issue an SCN (Shipping Control Number) for each shipment.*   __X__ Required   ____ Not required

18.   **NOTIFICATION OF SHIPMENT:** At time of shipment, contact via telephone or telefax the party listed below and advise the following:

-Project Number
-MR Number, Items included
-Routing and ETA at destination

-Purchase Order Number
-Carrier's Name, Bill of Lading Number
-Number of Boxes, Crates, etc. (including individual weights and dimensions of each piece)

**NOTIFY THE FOLLOWING:**

**ATTN:**
Telephone:

**EMAIL:**   @akerkvaerner.com
Facsimile:   (713) 270-3850

19.   **JOBSITE NOTIFICATION:** Each bill of lading is to contain the following statement:  Notify jobsite 24 hours prior to delivery..  If notification is not made, shipper or consignee will not be responsible for demurrage.

20.   **SHIPPING DOCUMENT COMPLIANCE:**

A.   All shipments must include packing list and show the Project Number, Purchase Order Number, Material Requisition Number, Area Item Number and Tag Number/Client I.D.

B.   Two (2) complete sets of packing lists are to accompany each shipment.  One (1) copy inside each package and one (1) copy enclosed in a watertight envelope affixed to the outside of each package.

C.   The following documents are to be mailed *immediately* upon shipment to:

**ONE (1) COPY OF THE BILL OF LADING
TWO (2) COPIES OF THE PACKING LIST**

Aker Kvaerner Plant Services Group, inc.
3800 Briarpark Drive, Houston, Texas 77042
**ATTN:**

21.   **INVOICING:** Invoices and supporting documents, including freight bills, submitted for payment on this order must refer to the Buyer's:

| | | |
|---|---|---|
| Project number | **Original invoice to:** | **One copy of invoice to:** |
| Purchase order number | Bigler, LP | Aker Kvaerner |
| Material req. Number | Attn: Accounts Payable | Plant Services Group, Inc. |
| Item number(s) | 1920 N. Memorial Way, Suite 201 | 2801 E. 13th. Street |
| Tag number(s) | Houston, Texas 77007 | LaPorte, Texas  77571 |
| Cost code | **ATTN:  ACCOUNTS PAYABLE** | **ATTN:  Renee Turman** |

*PP-SS-Rev 4, Nov, 2005*


# BIGLER

## GENERAL INSTRUCTIONS
### PROJECT NO.  P0600510

Item numbers shown on invoice are to correspond with those shown on the purchase order. Invoice must indicate if invoice is "Partial" or "Complete". All invoices not submitted with the aforementioned data or that are incorrect will be returned for resubmittal. All discounts will be taken from the date the new invoice is received by Purchaser.

It shall be the Seller's responsibility to document any price changes resulting from any design changes, and request and receive a "Change Order" before invoicing in excess of the amounts shown herein.

An invoice that does not agree with this order or any subsequent change order shall not be processed. Seller will submit final invoice within fifteen (15) working days after final shipment is made. This invoice is to state "Complete and Final Invoice". One original and two copies of every invoice, each copy complete with supporting documents, is to be submitted.

Invoices must show transportation costs, if any, as a separate item. ALL FREIGHT IS TO BE PREPAID. Collect shipments will not be accepted. All materials which are of origin other than U.S.A. must have "Certificate of Origin". The documentation required for U.S. Customs purposes will be as follows:

(a) Invoices showing F.O.B. value  (b) Certificates of Origin.
(c) Air/Ocean Bill of Lading (negotiable)  (d) Packing List.

In instances where a "Retention" amount has been withheld by Purchaser, a separate invoice must be submitted for the retained amount when due.

**SPECIAL NOTE:** The following clause must appear on the Seller's invoice when Purchaser or its designated representative has inspected the material or equipment and has taken no exception:

*"The material (or equipment) requiring inspection, if ordered, has been inspected by your representative who has taken no exception to delivery."*

Omission of this clause will delay payment until vendor's certification has been received.

**Unless vendor data document commitments and invoice conditions are strictly adhered to, acceptance of invoices and payment will be delayed pending compliance.**

22. **AUDIT:** In the event you are the successful Bidder and selected Seller, you shall maintain records of all purchases. Purchaser or his representatives shall have the right to examine books, records, documents and other evidence together with accounting procedures and practices, sufficient to reflect properly all direct and indirect costs of whatever nature for claims to have been incurred and anticipated to be incurred in the performance of this purchase order.

If this purchase order is completely or partially terminated, the records relating to the work terminated shall be made available for a period of three (3) years from the date of any resulting final settlements.

23. **OWNERSHIP AND CONFIDENTIAL INFORMATION:** All drawings, specifications, plans data, or other written material furnished by Purchaser to Seller, and all copies thereof, shall remain in the property of the Purchaser, and all such material shall be returned to Purchaser on demand. The information disclosed in such drawings, specifications, plans, data, or other written material shall not be disclosed to third parties or used by Seller other than in connection with this order without Purchaser's prior written consent, except to the extent that such information is in the public domain or was in Seller's prior possession without obligation of secrecy. Properly endorsed secrecy agreement will __X__, will not ____, be required.

*PP-55-Rev 4, Nov, 2005*

 **BIGLER**

## GENERAL INSTRUCTIONS
### PROJECT NO. __P0600510__

24. **WARRANTY:** It is understood and agreed to by Seller, that title to all equipment/material purchased by Purchaser shall revert to Purchaser and its legal successors or assignors.

25. **ESCALATION:** Pricing is firm and not subject to escalation.

26. **SPARE PARTS:** Your recommendations and separate prices are required for:

   a) Commissioning Spares, and b) Spares for <u>Twelve</u> (12) months operation ____ Not Required

27. **SALES TAX:** Vendor will invoice Bigler Sales Tax.

*PP-55-Rev 4, Nov, 2005*

 **B I G L E R** *A Chemical Company*

1920 N. Memorial Way, Suite 201
Houston, TX 77007
P 713.864.3303
F 713.864.3343

## TERMS AND CONDITIONS

**1.0   DEFINITION AND ACCEPTANCE**

Purchaser shall be defined as Bigler, LP or any Bigler legal affiliates or any agent acting on Bigler's behalf.   This Purchase Order becomes an enforceable agreement of Seller and Purchaser upon the first occurrence of any of the following events: Seller signs and returns an acceptance copy of the Purchase Order; or Seller acknowledges acceptance of this Purchase Order in any other manner; or Seller begins to perform under the Purchase Order.

**2.0   COMPLETE AGREEMENT**

2.1   This Purchase Order, together with all documents attached and/or incorporated by reference, forms the entire agreement between the parties, and all prior negotiations, proposals, and/or writings in any way related to this Purchase Order are superseded by this Purchase Order.   Any references to Seller's quotation, bid document, or proposal are for information or clarification purposes only, and do not constitute acceptance of any term, condition, or instruction contained in any such document, except to the extent expressly incorporated herein.

2.2   No terms and conditions stated in or attached to Seller's communications to Purchaser, including, but not limited to, acknowledgments or invoices, are applicable to this Purchase Order in any way, and are not to be considered to be Seller's exceptions to the provisions of this Purchase Order.

2.3   Trade custom, trade usage and past performance are superseded by this Purchase Order and shall not be used to interpret this Purchase Order.

2.4   Anything that may be called for in the specifications and not shown on the drawings, or shown on the drawings and not called for in the specifications, shall be considered to be called for on both. In the event of any ambiguities, express conflicts, or discrepancies in the Purchase Order or the specifications, drawings, or other documents which are a part of this Purchase Order to the extent such are reasonably discoverable, Seller shall immediately notify Purchaser and subject to Article 3.0 shall comply with the written instructions of Purchaser to resolve the matter.   Any item required by any portion of this Purchase Order including, but not limited to, purchase description, specifications, drawings, timely delivery of goods and timely performance of services, is a material part of the required performance of Seller under this Purchase Order, even if such item is not required by other portions of this Purchase Order.   If preprinted terms and conditions conflict with special or typewritten terms on the face of this Purchase Order, the special or typewritten terms shall govern.

**3.0   CHANGES**

3.1   Purchaser shall have the right to make written changes to the specifications and drawings for goods and/or related services covered by this Purchase Order. If Seller believes that such changes affect the price or delivery date for such goods and/or related services, Seller shall notify Purchaser in writing (with complete supporting documentation) within ten (10) calendar days after receipt of Purchaser's written notice of change.   Any request for adjustment of price or delivery will be waived for all purposes by Seller unless written notice of such request is made within ten (10) calendar days after receipt of Purchaser's written notice of change.   However, Seller shall not perform any change until released in writing by Purchaser.

3.2   Purchaser and Seller shall mutually agree in writing upon any adjustment pursuant to Article 3.1 to reflect the extent, if any, that such change has resulted in an increase or decrease in the price and/or a delay or acceleration of the delivery date.   Seller shall not suspend performance of the unaffected portion of this Purchase Order while Purchaser and Seller are in the process of making any such change.   If released in writing by Purchaser, Seller shall comply with and perform such change in accordance with the terms of this Purchase Order during the time Seller and Purchaser require to mutually agree upon an equitable adjustment.

**BIGLER** *A Chemical Company*

3.3   No substitutions shall be made in this Purchase Order without the prior written authorization of Purchaser.  No agreement or understanding modifying the conditions or terms of this Purchase Order shall be binding upon Purchaser nor will extra compensation be paid by Purchaser unless the agreement or understanding is made in writing.

## 4.0   ORIGIN OF MATERIALS

Only new materials as specified and of domestic origin shall be furnished hereunder unless alternates are approved at Purchaser's sole discretion in writing by Purchaser and/or listed in the Purchase Order.  Materials not in conformity with these requirements are subject to return at Seller's expense.

## 5.0   PRICE

The prices on this Purchase Order are firm and not subject to escalation unless expressly noted on the face hereof.

## 6.0   INSPECTION

6.1   Purchaser shall have the right with or without Owner's representative to expedite, inspect, and/or witness any tests of Seller of goods provided or to be provided by Seller.  Purchaser shall be granted reasonable access to those portions of the Seller's facilities or Seller's subsupplier facilities which are related to or involved with the manufacturing or processing of this Purchase Order subject to confidentiality requirements as may be reasonably imposed by Seller.

6.2   Purchaser's expediting, inspection or witnessing of testing, or lack of inspection or witnessing of testing, or lack of response shall in no way release the Seller from any obligations related to this Purchase Order.

6.3   Purchaser reserves the right to review and approve Seller's Quality Assurance and Quality Control Procedures.

6.4   Seller and/or Seller's subsupplier(s) will notify Purchaser at least five (5) calendar days in advance of the date any inspection or test is to be made.  If for any reason the inspection should be delayed, Seller shall immediately notify Purchaser in writing.

6.5   NO GOODS SHALL BE SHIPPED BY SELLER ON THIS PURCHASE ORDER WITHOUT A FINAL INSPECTION BY PURCHASER OR A WRITTEN WAIVER OF INSPECTION BY PURCHASER. VIOLATION OF THIS REQUIREMENT SHALL CONSTITUTE A MATERIAL BREACH OF THIS CONTRACT.

## 7.0   ASSIGNMENT

Neither this Purchase Order nor any portion hereof shall be assigned or delegated without Purchaser's prior written consent and any such assignment or delegation without such consent shall be void.  Such consent shall not be unreasonably withheld.  Purchaser reserves the right to assign this Purchase Order to the Owner or Owner's successors or to Purchaser's affiliates without such consent but with fourteen (14) days written notice of such proposed assignment.  Purchaser further agrees that any such assignment shall be to a financially viable entity capable of discharging Purchaser's obligations hereunder.  Seller's use of domestic subsidiaries or affiliates of Seller to provide portions of the goods shall not be considered an assignment of this Purchase Order if such use is a normal part of Seller's operation at the effective date of this Purchase Order.

## 8.0   CONFIDENTIAL INFORMATION

8.1   All drawings, data, designs, inventions, and other technical material supplied to Seller by Purchaser under this Purchase Order and designated as confidential or proprietary shall comprise the "Confidential Information". Seller shall retain the Confidential Information in absolute confidence and not under any circumstances disclose it to any third party and shall use the Confidential Information only for the performance of this Purchase Order. Seller shall not disclose the Confidential Information to any subsupplier without first requiring this same agreement in writing from the subsupplier. Seller shall return all Confidential Information and copies thereof to Purchaser upon completion of Seller's obligations under this Purchase Order, or upon Purchaser's written request at any earlier time.

**BIGLER** *A Chemical Company*

8.2  Seller shall not publicize the existence or scope of this Purchase Order without Purchaser's prior written consent.

## 9.0  RETENTION AND OFFSET

9.1  A retention of up to five percent (5%) of each invoice may be retained by Purchaser to defray the cost of field rework on the goods provided hereunder, and to ensure that Seller will provide all items ordered, including all related spare parts. Any expenses incurred by Purchaser in field fitting the goods shall be offset against this reserved sum to the extent of the retention and thereafter invoiced to and paid by the Seller.

9.2  Purchaser, without waiver or limitation of any rights or remedies of Purchaser or Owner, shall be entitled from time to time to deduct from any amounts due or owing by Purchaser to Seller in connection with this Purchase Order any and all amounts owed by Seller to Purchaser or Owner.

## 10.0  TERMINATION UPON DEFAULT BY SELLER

10.1  Purchaser may terminate this Purchase Order by written notice to Seller upon the occurrence of any of the following events:

10.1.1  Seller files for bankruptcy or an involuntary bankruptcy proceeding is commenced against Seller; or

10.1.2  Seller makes a general assignment for the benefit of its creditors; or

10.1.3  If any receiver is appointed for Seller's business; or

10.1.4  Seller is in default of any provision or requirement of this Purchase Order.

10.2  Termination by Purchaser under Article 10.1 does not in any way prejudice any other rights or remedies which Purchaser may have.

10.3  In the event that Seller does not commence cure or cure within the fourteen day cure period, Purchaser may terminate this Purchase Order and complete the performance of this Purchase Order by any reasonable means, and Seller shall be responsible for any additional costs incurred by Purchaser in accomplishing this completion. Upon request by Purchaser, Seller will deliver or assign to Purchaser any work in progress at the time of termination.

10.4  Purchaser may retain any monies owed to Seller for work completed prior to termination of this Purchase Order to offset anticipated additional expenses incurred in completion of performance or other damages incurred by Purchaser as a result of Seller's default. In the event that such retained monies exceed the actual cost of completion, then the excess amounts shall be paid to Seller.

10.5  Purchaser may choose to waive any default by Seller without relinquishing the right to enforce Article 10.0 in the case of later defaults by Seller.

## 11.0  TERMINATION FOR PURCHASER'S CONVENIENCE

11.1  At any time, Purchaser may terminate for its convenience all or any separable part of this Purchase Order by giving written notice to Seller. On the date notice of such termination is received by Seller, Seller shall: discontinue all work so terminated, shall place no additional orders, and shall preserve and protect materials on hand purchased for or committed to this Purchase Order, work in progress, and completed work both in Seller's and in its subsupplier plants pending Purchaser's written instructions, and shall dispose of same in accordance with Purchaser's written instructions.

11.2  Seller and Purchaser shall promptly and mutually agree to a termination payment, if any. Such payment shall be based upon that portion of the work satisfactorily performed through the date of termination, including reimbursement for reasonable profit on such work, plus reasonable and necessary expenses resulting from the termination and as documented to Purchaser's satisfaction, disposition of work and material on hand, less amounts previously paid by Purchaser. Seller shall not be entitled to any loss of prospective profits, contribution to overhead on terminated work or incidental, consequential or other damages because of such termination. Seller shall deliver or assign all goods with all applicable warranties or dispose of goods as directed in writing by Purchaser prior to final payment.

 BIGLER *A Chemical Company*

**12.0  GOVERNING LAWS AND REGULATIONS**

Seller warrants that in fulfilling this Purchase Order the material and/or equipment furnished under this Purchase Order will comply with all applicable laws, codes and regulations including, but not limited to, those promulgated by OSHA and EPA or any Federal, State, and Local authorities. Seller shall indemnify, defend, release and hold harmless Purchaser and Owner against all loss, penalties or damages resulting from any violations of this warranty. The Purchase Order shall be governed by and subject to the internal laws and jurisdiction of the State of Texas without regard to principles of conflicts of laws.

**13.0  PATENTS**

For all items furnished under this Purchase Order, if the design of an item was not furnished by Purchaser or Owner, Seller shall indemnify, defend, release and hold harmless Purchaser and Owner, and their successors and assigns, from all judgments for damages resulting from any claims or suits for infringement of United States patents, copyrights, trademarks, or other intellectual property rights. Seller shall defend all such suits and shall pay all related costs. If the use of such item is enjoined, Seller shall, at its sole expense, and subject to Purchaser's sole discretion, procure the right to continue use of the item, modify the item to render it noninfringing, replace the item with a noninfringing item, or remove the item completely and refund the purchase price plus all related transportation, installation and dismantling costs.

**14.0  INDEMNIFICATION**

14.1   In consideration of the payments agreed to be made by Purchaser to Seller under this Purchase Order, Seller shall assume the risk of and release, defend, indemnify and hold harmless Purchaser, Owner, all related entities of Purchaser and Owner, and employees and agents and assigns of each ("Indemnitees') from and against all loss, damage, liability, cost and expense (including, without limitation, reasonable attorneys' fees) arising out of any injury (including death) to any person or damage to any property resulting in any way from a Seller-supplied product hereunder that is defective.

14.2   Further, for all claims not covered by Article 14.1 above, and in consideration of the payments agreed to be made by Purchaser to Seller under this Purchase Order, Seller shall assume the risk of and release, defend, indemnify and hold harmless Indemnitees from and against all loss, damage, liability, cost and expense (including without limitation, reasonable attorneys' fees) arising out of any injury (including death) to any person or damage to any property resulting from or in any way connected with the performance of this Purchase Order or the goods furnished hereunder, regardless of whether or not such loss, damage, liability, cost or expense is caused in any way in part by an Indemnitee including, but not limited to, any negligent act, omission or strict liability of any Indemnitee, but only to the extent that Seller is negligent in the performance of its obligations under this Purchase Order.

14.3   Neither this Article nor any other provision of this Purchase Order shall be construed in any circumstances to constitute an indemnification against any loss, damage, liability, cost or expense caused solely by the negligence of such Indemnitee.

14.4   The indemnity obligations in this Purchase Order shall be considered to be modified as required to exclude indemnification which is expressly prohibited by applicable statute or law, with all other obligations of Seller under this Purchase Order enforced to the extent permitted by law.

**15.0  GUARANTEE**

Seller guarantees that all goods and components furnished hereunder shall be (a) new, (b) in strict conformity with specifications, (c) free from faulty materials, workmanship, and design (except to the extent the design is furnished by Purchaser or Owner) and (d) if of Seller's design, of proper materials, sizes and capacity to perform satisfactorily under the full range of operating and/or design conditions specified. Seller shall promptly repair, modify, or replace all goods and components not in conformity with the above (except goods or components which have failed due to normal wear and tear) upon notification by Purchaser within twelve (12) months from date of initial startup or eighteen (18) months from date of shipment, whichever occurs first, free of cost to Purchaser. In the event of Seller's failure to correct or replace goods and components as required herein, Purchaser may correct or replace such goods or components and Seller shall pay all reasonable costs thereof. Such guarantee, together with all other service warranties of Seller, shall

 **BIGLER** *A Chemical Company*

extend to Purchaser or Owner, their successors and assigns. No penalties for consequential damages such as "down time", loss of products or loss of profits shall be assessed against Seller.

### 16.0 FORCE MAJEURE

Neither Purchaser nor Seller shall be liable for failure to perform hereunder if such failure is due to any event beyond the reasonable control of the affected party, such as: acts of God; war; riot; terrorism; civil commotion; insurrection; government orders, rules, regulations, suspensions or requisitions of any kind; or fire. In the event that Seller is unable to perform for reasons beyond its control, Seller must notify Purchaser in writing within five (5) days of the occurrence producing the force majeure delay or forfeit its exclusion from liability under this Article. The notice must contain reasons for the delay and an estimate of the delay in shipment of the goods. After receipt of such notice, Purchaser shall have the right either to accept Seller's delay in ability to perform or require Seller to initiate corrective actions to overcome the delay or terminate the order in accordance with Article 11 above.

### 17.0 SHIPMENT

Partial shipments are not allowed unless expressly stated in this Purchase Order. Partial shipments must be accompanied by identifying documents, but such shipments shall not be interpreted to make the obligations of Seller severable. No charge will be allowed for packing, shipment, or handling unless expressly stated in this Purchase Order. Seller shall pay for damaged goods resulting from improper packing or marking. Itemized packing lists must accompany each shipment. Purchaser's count will be accepted as final and conclusive on shipments not accompanied by Seller's itemized packing list.

### 18.0 TITLE

Seller warrants full and unrestricted title to Purchaser for all goods and/or related services furnished by Seller under this Purchase Order, free and clear of any and all liens, restrictions, reservations, security interests, and encumbrances. If Purchaser makes progress payments to Seller under this Purchase Order, title to the goods and related services shall pass to Purchaser at the time that Seller identifies the goods to this Purchase Order. Seller shall clearly identify the goods (including raw materials and components) as property of Purchaser by visible marking or tagging, and Purchaser shall have the right, at Purchaser's option, to inspect and verify that said goods have been identified as Purchaser's property. Care, custody, and control of such goods remains with the Seller until such time as Purchaser takes physical possession or otherwise agrees in writing by Change Order to this Purchase Order. All shop drawings, patterns, tools (if such tools are useful only to produce the goods ordered), or other items made preparatory to production of any goods purchased under this Purchase Order are Purchaser's property and upon demand shall be delivered to Purchaser.

### 19.0 RESERVATION OF RIGHTS

Any action by Purchaser with respect to inspection of or payment for the goods and/or related services covered by this Purchase Order shall not prejudice Purchaser's right to reject nonconforming or defective goods or services, nor be deemed to constitute acceptance by Purchaser of the goods or services, or affect in any way Seller's obligations under this Purchase Order notwithstanding Purchaser's opportunity to inspect the goods and/or related services, Purchaser's knowledge of the nonconformity or defect, the importance or critical nature of, or the ease of discovery of the nonconformity or defect, nor Purchaser's earlier failure to reject the goods or services.

### 20.0 WAIVER

Purchaser's failure to insist on performance of any term, condition, or instruction, or failure to exercise any right or privilege or its waiver of any breach will not constitute a waiver of any right or privilege of Purchaser.

### 21.0 HAZARDOUS MATERIALS

Seller shall notify Purchaser in writing upon acceptance of this Purchase Order if goods furnished are subject to laws or regulations relating to hazardous or toxic substances; or when disposed of, to regulations governing hazardous wastes, or to any other applicable environmental or safety and health regulations. Seller shall furnish without limitation all appropriate and required shipping, handling and use certifications, instructions, labeling, lists and goods representations

**BIGLER** *A Chemical Company*

for shipping, safety, handling, exposure and disposal in a form sufficiently clear for use by Purchaser's nontechnical personnel and sufficiently specific to identify all action which the user must take concerning the material. In addition to the above, the following certification MUST be made on the bill of lading: "This is to certify that the above named articles are properly classified, described, packaged, marked and labeled and are in proper condition for transportation according to any applicable transportation regulations,"

## 22.0 VALIDITY OF PROVISIONS

In the event any provision, or any part or portion of any provision of this Purchase Order shall be held to be invalid, void or otherwise unenforceable, such holding shall not affect the remaining part or portions of that provision, or any other provision hereof.

## 23.0 PURCHASER'S SECURITY INTEREST

If Purchaser makes any advance or progress payment to Seller under this Purchase Order upon Purchaser's request, Seller agrees to execute a Security Agreement and Financing Statement (both in a form satisfactory to Purchaser) granting a Security Interest to Purchaser, effective in all states of fabrication or manufacture, in the proceeds, raw materials and goods which are purchased, manufactured, or otherwise obtained pursuant to this Purchase Order.

WHEN THIS PURCHASE ORDER COVERS THE SUPPLYING OF RELATED SERVICES, OR RELATED SERVICES AND MATERIALS, FOR OR ON PURCHASER'S OR OWNER'S PREMISES ("WORK"), IT IS SUBJECT TO THE FOLLOWING ADDITIONAL TERMS AND CONDITIONS, ARTICLES 24 AND 25, INCLUSIVE.

## 24.0 INSURANCE

24.1 **Certification of Insurance:** Before any Work is performed under this Purchase Order, written proof of compliance with the requirements of this Article shall be furnished to Purchaser on a certificate furnished by Purchaser with insurers satisfactory to Purchaser and Owner and executed by an authorized representative of Seller's insurer, which certificate shall provide for at least THIRTY (30) DAYS written notice received by Purchaser prior to the cancellation or modification of any insurance referred to therein. Purchaser may also at any time call for, and Seller shall promptly furnish, true and exact copies of all policies of insurance affording the coverage required herein and any endorsements or changes thereto.

24.2 **Worker's Compensation:** Seller shall maintain Worker's Compensation Insurance as required by law and Employer's Liability Insurance with a minimum limit of $100,000 per occurrence.

24.3 **Comprehensive General Liability:** Seller shall maintain Comprehensive General Liability Insurance with a minimum combined single limit of $1,000,000 per occurrence for bodily injury and property damage, protecting Seller against bodily injury, including death, and property damage arising out of Seller's operations. The Comprehensive General Liability Insurance shall include products liability, blanket contractual, completed operations, broad form property damage, and shall expressly cover the contractual liability assumed by Seller under Article 14.0 above. The policy shall be endorsed to name Purchaser, its affiliates and Owner as additional insured parties.

24.4 **Automobile Liability:** Seller shall maintain Automobile Liability Insurance with a minimum combined single limit of $1,000,000 per occurrence for bodily injury and property damage covering use and operation of owned, non-owned and hired vehicles. The policy shall be endorsed to name Purchaser, its affiliates and Owner as additional insured parties.

24.5 Article omitted.

24.6 **Waiver of Subrogation and Additional Insured:** Seller shall obtain from its insurers for all insurance coverages applicable to the work and/or required hereunder, a waiver of subrogation against Purchaser, Owner and the agents and employees of each. Purchaser, Owner and their affiliates shall be named as an additional insured on Seller's automobile, comprehensive general and excess liability policies, and each shall contain a severability of interest clause.

**BIGLER** *A Chemical Company*

24.7 **Third Party Requirements:** Should Seller subcontract any of the work to a third party, Seller (1) shall maintain in full force and effect Purchaser's Protective Liability coverage with the same limits as specified for Comprehensive General Liability above, and (2) shall require such third party to furnish the same insurance and indemnity as are required of Seller hereunder and show evidence thereof to Purchaser on a certificate furnished by Purchaser.

24.8 **Liability:** The fact that Seller has obtained the insurance required in this Purchase Order shall in no manner lessen nor affect Seller's obligations or liabilities set forth in this Purchase Order.

## 25.0 PERSONNEL SAFETY AND HEALTH REGULATIONS

While on the premises of Purchaser or Owner, Seller and its employees shall comply with all applicable safety and health laws, regulations and ordinances, and with the safety, health and plant regulations of Purchaser and Owner, and shall ensure that all its employees and agents have a safe place of work on said premises. Seller shall keep said premises and the vicinity thereof clean of debris and rubbish caused by its work and, upon completion of its work, shall leave the premises clean and ready for use. Upon request of Purchaser or Owner, and at no cost or expense to Purchaser or Owner, Seller shall promptly remove from said premises any person under the control of Seller who violates any of the aforesaid safety, health or plant laws, regulations, ordinances or rules or who may cause or threaten to cause a breach of the peace, or any other disturbance of the work.

## 26.0 LIMITATIONS OF LIABILITY

Neither Purchaser nor Seller shall be liable to the other for consequential, incidental, indirect, punitive or exemplary damages in connection with any claims arising under or related to this Purchase Order, including without limitation, losses caused by unavailability of facilities, loss of use, loss of revenues, loss of business opportunity, or loss of profit.

S:\docs\22686\006\BiglerTC short form 070109.doc

**AKER KVAERNER PLANT SERVICES GROUP, INC.**          **OPERATING POLICY**
A DIVISION OF KVAERNER US, INC.
3600 Briarpark Drive          **INSPECTION DEPARTMENT**
Houston, TX 77042
P.O. Box 720421 (77272)
Telephone: (713) 270-2452
Fax: (713) 270-2775

## 1.0   GENERAL

1.1   This attachment covers procedures for inspection of direct and sub-orders when the body of Bigler's Purchase Order stipulates "To be inspected by Aker Kvaerner Inspection (a delegated Inspection Representative of Bigler LP). When such a stipulation is made, inspection will be at Seller's fabrication location. (See 3.3 below for SUB-ORDERS.)

1.2   Preinspection meetings will be initiated by Aker Kvaerner Inspection Department when such meetings are necessary to resolve questions involving Purchase Order requirements.

1.3   Seller's and Sub-suppliers' welding procedures and procedure qualifications, Aker Kvaerner weld orientation and identification, and weld description sheet must be completed and returned to Aker Kvaerner for review and approval prior to the start of any welding operations.

1.4   Seller shall furnish one (1) copy of the latest approved drawings and welding procedures to the Inspector.

1.5   Direct and sub-orders are described as follows:

   (a)   Direct orders are Bigler LP Purchase Orders issued to Seller for equipment and material.

   (b)   Sub-orders are orders issued by Seller to others for material or component parts or sub-assemblies for incorporation into Seller's fabrication.

1.6   Whenever material traceability is required and the material cannot be identified, or a reasonable doubt exists as to its identity, the Vendor shall be required to have check tests carried out at his own expense.

## 2.0   NOTIFICATION

2.1   Seller shall notify Inspection Office by telex at least five (5) working days prior to the date inspection is required.

PP-10
Rev 2, AU 91

2.2     The inspection notification shall include reference to:

     2.2.1     Bigler's Purchase Order number.

     2.2.2     Seller's fabrication location and date items will be ready for inspection.

     2.2.3     The portion of the order which will be ready for inspection.

     2.2.4     Any other appropriate identifying information such as Item/Tag Number, etc.

2.3     Seller is required to give specific notification, as above, when Hydrostatic, Impact and Mechanical Performance tests are to be witnessed.

2.4     Notification is required when orders for "catalog" material such as pipe, valves, fittings, etc. are complete, or when there is sufficient quantity ready to justify inspection and authorization of partial shipments.

2.5     Notification shall be given in adequate time to avoid production delays awaiting an Inspector. In the event of overtime, weekends and holiday work, it is the responsibility of the Vendor to give sufficient advance notice in order to allow proper inspection arrangements.

2.6     In the event that Seller is unable to comply with the Inspection requirements referred to in paras. 2.01 and 2.05, above, then the Seller shall so advise Kvaerner Process as soon as possible in advance of the scheduled Inspection date.

## 3.0    SELLER'S PURCHASE ORDER TO SUBSUPPLIERS

3.1     Bigler LP RESERVES THE RIGHT TO INSPECT THE VENDOR'S SUB-ORDERS. IF THE ITEMS REQUIRE INSPECTION, SELLER WILL INCLUDE IN THE SUB-ORDER THE INSPECTION AND NOTIFICATION REQUIREMENTS AS SPECIFIED IN 1.0 AND 2.0 ABOVE.

3.2     It is expected that all sub-orders will be specified in English; however, as a minimum for inspectable sub-orders, the description of equipment or material involved, plus general specification, material specifications, inspection and testing requirements must be in English

3.3     Seller's sub-orders shall identify the source and geographical location of fabrication, and shall show the Fabricator's reference numbers, and the name and telephone number of the inspection contact at the point of inspection.

3.4     Where Seller has an extended delay in issuing a formal purchase order for items requiring inspection, Seller shall provide copies of letters of intent, cables of intent, bills of material, requisitions, and/or other data that can be used for inspection purposes.

3.05  Seller's sub-orders and supplements thereto, etc. for items requiring inspection shall be accompanied by all pertinent inspection procedures and requirements as specified in Kvaerner Process Purchase Order.

## 4.0  INSPECTION DOCUMENTATION

4.1  Inspection Release Notices will be issued "on-the-spot" to Seller.  Rejection Notices will clearly state basis for rejection.

4.2  Bigler LP will not honor Seller invoices unless a copy of pertinent release notice is attached to the billing.  Equipment and material that has been shipped prior to required Inspection acceptance is considered to be rejected.

PP-10
Rev 2, AU 91

## WELD ORIENTATION AND IDENTIFICATION

| Applicable Code and/or Specification | Vendor Company Name and Plant Location |
|---|---|
| Purchase Order and Item Tag Number(s) | |

| | Pressure Vessel | | Heat Exchanger | | Other (Describe below) |
|---|---|---|---|---|---|
| | Radiograph 100% | | Random Radiography | | Radiography not required |

Other Inspection/Testing Requirements

| Test-Weld Heat Treat Temperature & Time | Critical Exposure Temperature |
|---|---|

| Draw a single-line sketch of the apparatus. Locate all pressure containing welds, indicate non-pressure or similar metal welds. Identify each different welding procedure by separate letter or number. Identify field welds with the prefix FW-, and state if weld will be made by vendor or others. Describe each weld procedure individually on weld description sheets. | Date | Prepared by |
|---|---|---|
| | Rev.# | Telephone |

This space for sketch

| This space for Vendor use | This space for Aker Kvaerner |
|---|---|

PP-10
Rev 2, AU 91

**WELD DESCRIPTION SHEET**

| Applicable Code and/or Specification | Vendor Company Name and Plant Location |
|---|---|
| Purchase Order and Item Tag No(s). | |

| Pressure Vessel | Heat Exchanger | Other |
|---|---|---|

| Per ASME VIII-Div.1 | Shell Roundseam | Nozzle to Shell | Tubesheet to Shell |
|---|---|---|---|
| Fig. UW-16.1 | Shell to Head | Overlay | Tube to Tubesheet |
| Fig. UW-13.2 | Shell to End-Flange | Pipe to Pipe | Other |
| Shell Long Seam | Skirt to Head | Pipe to Fitting | |

| ASME SA   P.No.   Gr.No.   Thk. | ASME SA   P.No.   Gr.No.   Thk |
|---|---|

| ASME SFA   AWS   Trade Name | ASME SFA   AWS   Trade Name |
|---|---|
| ASME SFA   AWS   Trade Name | ASME SFA   AWS   Trade Name |

| | Double Butt | Overlay | Position | 2G-Horizontal | 5G-Multiple |
|---|---|---|---|---|---|
| | Single Butt | Fillet | 1G-Flat | 3G-Vertical | Other |

| | Submerged Arc | Flux Cored Arc |
|---|---|---|
| | Gas Tungsten Arc | Combination of Processes |
| Shielded Metal Arc | Gas Metal Arc | Other (Describe below) |

| SHIELDING GAS | BACKING GAS | PREHEAT TEMP |
|---|---|---|

| WELD BEVEL | Torch Cut | Arcair Cut | Machine Cut | Other |
|---|---|---|---|---|

SKETCH *Show bevel angles, land, gap, and indicate number of passes*

| Vendor's qualified Weld Procedure | Date: | Prepared by: |
|---|---|---|
| Number:   Date: | Revision: | |
| This space for Purchaser's use. | | |

PP-10

Rev 2, AU 91

 **BIGLER**

## EXPEDITING QUESTIONNAIRE

A.   This Expediting Questionnaire is to be transmitted with the formal Bigler LP Purchase Order.
B.   The Vendor is required to complete and return this form - Attn: ___
     within 10 days.
C.   The information furnished by this form will be utilized by the Inspection and Expediting Departments to forecast activities and to
     monitor adherence to schedule as the order progresses.
D.   Therefore, such entries as "will advise", "not known", "later", or blank entries, are not permitted.
E.   Please seek such input as is necessary, or refer to the necessary records to develop the complete information requested below.
     Attach additional sheets if necessary.

| Bigler LP Purchase Order No: P0600510-0018 | Quantity & Description of Equipment Robert Evaporator | |
| --- | --- | --- |
| Vendor Company Name: RIGGINS COMPANY | Location of Manufacturing: | Vendor Order ID NO.: |

### PLEASE ENTER THE NAME AND TELEPHONE NUMBER OF THE INDIVIDUALS RESPONSIBLE AS:

| Title | Name | Telephone |
| --- | --- | --- |
| General Manager | | |
| Engineering Manager | | |
| Production Scheduler | | |
| Quality Control Manager | | |
| Contract Administrator | | |
| Material Purchasing Manager | | |
| Production Manager | | |
| Shipping Manager | | |

### PLEASE ENTER DESCRIPTION, ORDER DATE & RECEIPT DATE OF MAT'LS, COMPONENTS & SUB-ASSEMBLIES

| Description | Order | Receive | Description | Order | Receive |
| --- | --- | --- | --- | --- | --- |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### PLEASE ENTER YOUR TARGET DATES FOR COMPLETING THE FOLLOWING ACTIVITIES

| | Date | | Date | | Date |
| --- | --- | --- | --- | --- | --- |
| Acknowledgement of Order by Vendor | | Engineering Start Date (estimated) | | First Submittal for approval due by | |
| Turnaround time for drawing revision | | Start fabrication of detail parts | | Start fabrication of sub-assemblies | |
| Start fit-up of major assemblies | | Fabrication complete on first unit | | Final testing of first unit | |
| Prepared to ship first unit | | Completion interval between units | | Prepared to ship last unit | |

**WILL A DETAILED STATUS REPORT BE PREPARED AND SUBMITTED MONTHLY?**

**EXECUTED BY:** _____   **TITLE:** _____   **DATE:** _____

PP-08
Rev. 3, Nov 96