

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | |
| BIGLER LP; | § | Case No. 09-38188 |
| BIGLER LAND, LLC | § | Case No. 09-38189 |
| BIGLER PETROCHEMICAL, LP | § | Case No. 09-38190 |
| BIGLER PLANT SERVICES, LP | § | Case No. 09-38192 |
| BIGLER TERMINALS, LP | § | Case No. 09-38194 |
| | § § | |
| | § | Chapter 11 |
| Debtors. | § | Jointly Administered Under |
| | § | Case No. 09-38188 |

### MEMORANDUM OPINION ON THE OBJECTION OF THE ASHLEY ELIZABETH SCIANNA ARORA INVESTMENT TRUST AND THE STEPHANIE ELIZABETH SCIANNA INVESTMENT TRUST'S OBECTION TO CONFIRMATION OF CHAPTER 11 PLAN
[Doc. No. 618]

### I. INTRODUCTION

The Court writes this Memorandum Opinion in order to address important issues relating to third-party releases in Chapter 11 plans. The Fifth Circuit has recently issued an opinion interpreting § 524 of the Code that substantially restricts the incorporation of releases in Chapter 11 plans.[1] *Bank of New York Trust Co. v. Official Unsecured Creditors Comm. (In re Pacific Lumber)*, 584 F.3d 229, 253 (5th Cir. 2009). Because *Pacific Lumber* is such a recent case, there is a relative dearth of cases applying this holding and providing guidance to practitioners on the various practical considerations it raises. One such consideration which particularly deserves illumination is at issue in the case-at-bar (and, this Court suspects, many other Chapter 11 cases):

---

[1] Any reference hereinafter to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (*i.e.* §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule"

the boundary line between releases barred by § 524 under *Pacific Lumber* and acceptable settlements of claims under § 1123(b)(3)(A) of the Code. Thus, the Court hopes that this Memorandum Opinion will be of some assistance to practitioners in crafting Chapter 11 plans that conform to current Fifth Circuit requirements.

## II. Procedural Background

### A. Filing of the Plan

On October 1, 2010, the above referenced debtors (the Debtors) filed their Third Amended Chapter 11 Plan (the Plan). [Doc. No 575]. Included in the Plan is a litany of injunctions and exculpatory clauses relieving various non-debtors of liability from various claims.

### B. Objection to the Plan

On October 27, 2010, the Ashley Elizabeth Scianna Arora Investment Trust and the Stephanie Elizabeth Scianna Investment Trust (the Trusts) filed their Objection to Confirmation of Chapter 11 Plan (the Objection) [Doc. No. 618], asserting that the Plan does not comply with applicable provisions of the Code. The Objection asserts that Articles 12.1, 12.2, and 12.4 of the Plan contain injunctions and exculpatory clauses that violate the Code in their scope and subject matter.[2] Specifically, the Trusts contend that Articles 12.1 and 12.2 of the Plan do not comply with the Code because they allegedly provide for a discharge of the Debtors, which is forbidden because the Plan is a liquidating plan. [Doc. No. 618, ¶ 3(a)(i–iii)]; *See*, 11 U.S.C. §1141(d)(3).

---

or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.
[2] The Objection contains objections other than those mentioned above, mostly pertaining to the classification of claims. Counsel for the Trusts represented on the record that these objections would have to be resolved by the adversary proceeding between the Trusts and Amegy Bank, and so these specific objections were withdrawn with

Article 12.4 of the Plan is alleged to violate the provisions of § 524(e). In support of this argument, the Trusts cite *Bank of New York Trust Co. v. Official Unsecured Creditors Comm. (In re Pacific Lumber)*, 584 F.3d 229, 253 (5th Cir. 2009) ("There are no allegations in this record that either MRC/Marathon or their or the [d]ebtors' officers or directors were jointly liable for any of Palco's or Scopac's pre-petition debt. They are not guarantors or sureties, nor are they insurers. Instead, the essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy. The fresh start § 524(e) provides to debtors is not intended to serve this purpose.").

The Trusts also cite one of *Pacific Lumber's* progeny: *In re Pilgrim's Pride Corporation*, Case No. 08–45664–DML–11, 2010 Bankr. LEXIS 72, (Bankr. N.D. Tex. January 14, 2010). There, the court, in analyzing the propriety of exculpatory clauses found in a proposed plan, stated that:

> In effect, Articles VIII and X of the [p]lan . . . prevent creditors and shareholders from pursuing most potential claims or causes of action against [d]ebtors and third parties of [d]ebtors including, *inter alia* [d]ebtor's directors, officers, financial advisors, and attorneys; the [c]ommittees and their members and professionals; and Pilgrim Interests, Ltd. (solely in its capacity as guarantor under the Guarantee agreements).
>
> In addition to other applicable law, however, recent Fifth Circuit precedent has limited the permissibility of third-party protections such as those found in Articles VIII and X. *See Bank of New York Trust Co. v. Official Unsecured Creditors Committee (in re Pacific Lumber)*, 584 F.3d 229, 253 (5th Cir. 2009)."

*Id.* at *11–12. *Pilgrim's Pride* concludes that, under *Pacific Lumber*, committees, their members, and their representatives are allowed a qualified immunity for acts or omissions during

---

respect to the plan confirmation process.

a Chapter 11 case that are within the scope of their duties. *Id.* at *13. A debtor is also protected by an injunction under § 524(a)(2) from third parties pursuing claims that have been discharged under § 524.[3] *Id.* at *12–13. However, similar protection to non-committee third-parties, such as a debtor's directors and officers, is prohibited:

> Because *Pacific Lumber* is binding precedent, the court may not, over objection, approve through confirmation of the [p]lan third-party protections, other than those provided to the [c]ommittees, members of the [c]ommittees, and the [c]ommittees' [p]rofessionals.

*Id.* at *16.

### C. The Debtors' Reply to the Objection

On November 1, 2010, the Debtors filed the Debtors' Consolidated Reply to Objections to Confirmation of the Debtors' Third Amended Plan of Liquidation (the Reply) addressing the objections to the injunctions and exculpatory clauses contained in the Plan and arguing that these provisions are acceptable under the Code. [Doc. No. 626]. Specifically, the Reply notes that Article 12.1 of the Plan is a release of a "Released Party"[4] from causes of action which are property of the estate, and highlights the language in 12.1 clarifying that the release in question does not extinguish direct causes of action held by claimants other than the Debtors. The Debtors

---

[3] However, this Court notes that such a discharge or injunction is only available to Chapter 11 debtors under a plan of rehabilitation. Under a liquidating plan, such as the Plan in the case at bar, a debtor will not be entitled to a discharge or an injunction, pursuant to 11 U.S.C. §1141(d)(3).

[4] Section 1.1.101 of the Plan defines "Released Parties" as follows: (i) the Debtors and their respective Representatives, including but not limited to all officers, directors, employees, consultants, agents, financial advisors, attorneys and other representatives of the Debtors who served in such capacity on or subsequent to the Petition Date, in each case in their capacity as such; (ii) Parkman Whaling and its Representatives; (iii) the Committee and their respective Representatives, but only in their capacity as members of the Committee (by way of example only, if a Debtor or an Estate holds a Cause of Action against a Creditor who served on the Committee, unrelated to that Creditor's actions as a member of the Committee, such Creditor is not released from any Cause of Action because of its membership on the Committee); and (iv) Amegy and its Representatives.

cite *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 589–590 (5th Cir. 2008) (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 n.44 (5th Cir. 1995)) in support of the propriety of the releases in Article 12.1.

In support of their contention that the injunction found in Article 12.2 is acceptable under the Code, the Debtors point out that the limitation of the injunction is to "actions taken 'on account of such claims or interest'" which, the Debtors contend, allows them meet to the requirements of the Code because it enjoins only claims directly related to and arising out of the bankruptcy. However, perhaps out of a concern that the language is impermissible, the Debtors also offer to modify Article 12.2 in the event the Court finds this language unacceptable.

In support of the acceptability of Article 12.4, the Debtors argue that the Trusts have taken an overly broad interpretation of the Fifth Circuit's holding in *Pacific Lumber* in asserting that only the Creditors' Committee and its professionals may receive a release under a plan. The Debtors also argue that the language contained in *Pacific Lumber* specifically ruling out releases for representatives of a debtor was mere dicta which should not be viewed by this Court as necessary or even appropriate to apply in the case at bar because the facts in this case are distinguishable from the facts in *Pacific Lumber*.[5]

---

[5] The Debtors argue that *Pacific Lumber* deals only with non-consensual releases and, in the case at bar, the releases are allegedly consensual with the exception of the Trusts' objection. The Debtors posit that the Trusts' objection cannot defeat the consensual nature of the other parties' agreement. In addition, the Debtors point out that the plan proponent in *Pacific Lumber* was a lender who was allegedly hostile to the debtor and pushed the limits of what the bankruptcy system would allow in a confirmation plan. Here, the Debtors point out that the Plan proponents are the Debtors, who, the Debtors argue, are proposing a Chapter 11 plan well within the boundaries of the bankruptcy system. Finally, the Debtors point out that in *Pacific Lumber*, the parties who were the subjects of the release did not include the debtors, the debtor's directors and officers, or the debtor's professionals. Therefore, the Debtors assert, "[t]he correct reading of *Pacific Lumber* is that it stands for the proposition that a non-debtor, third-party plan proponent cannot obtain non-consensual releases and exculpations for all actions it took in connection with the bankruptcy case merely because it contributed the cash necessary to fund its own plan." [Doc. No. 626]. The Court disagrees with the Debtors' argument that *Pacific Lumber* is inapplicable to the case at bar.

Finally, in reply to the objection to the Plan retaining certain pre-petition causes of action, the Debtors assert that 1) because the Plan provides that the Liquidating Trust will not pursue any post-confirmation causes of action, the Trusts have no standing because the retained causes of action cannot affect the Trusts; and 2) the Trusts lack standing to object generally because there is no reservation of any action against them.

### D. The hearing on the Objection

On November 3, 2010, a hearing (the Hearing) was held to determine, among other things, the propriety of the injunctions and exculpatory clauses contained in the Plan.

On the basis of the legal arguments offered at the Hearing and the pleadings submitted to this Court on the issues raised by the injunctions and exculpatory clauses in the Plan, the Court declined to confirm the Plan. Set forth below are the conclusions of law discussing why the Court decided not to confirm the Plan.

### III. CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Venue is proper pursuant to 28 U.S.C. § 1408.

**B.    Article 12.1**

Article 12.1, as currently worded, is impermissible under the § 524. Specifically, Article 12.1 contains objectionable language that should be modified in order to provide clarity as to its intent. The introductory language of Article 12.1 states that:

> EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, ON THE EFFECTIVE DATE, (a) EACH PERSON THAT HAS FILED A PROOF OF CLAIM; AND (b) TO THE FULLEST EXTENT POSSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, EACH ENTITY (OTHER THAN A DEBTOR) THAT HAS HELD, HOLDS OR MAY HOLD A CLAIM OR INTEREST (EACH A "CLAIMANT") REGARDLESS OF WHETHER OR NOT SUCH CLAIMANT AFFIRMATIVELY VOTES TO ACCEPT THIS PLAN . . . SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CAUSES OF ACTION WHATSOEVER THAT CONSITUTE PROPERTY OF THE ESTATES, INCLUDING ANY DERIVATIVE CAUSES OF ACTION ASSERTED OR THAT COULD BE ASSERTED ON BEHALF OF THE DEBTORS . . . .

[Doc. No. 575, Art. 12.1]. This language is overly broad and pushes Article 12.1 into the realm of releases forbidden by *Pacific Lumber*. There, the Fifth Circuit found a mandate against non-debtor releases in § 524, stating that "the fresh start § 524(e) provides to debtors is not intended to serve this purpose." *Pacific Lumber*, 584 F.3d 229, 252-53 (5th Cir. 2009). However, there are other sections of the Code that address the release of non-debtor liabilities, such as § 1123(b)(3)(A), which allows a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." *Pacific Lumber* is not explicit as to boundaries between the restriction of non-debtor releases under § 524(e) and the settlement of claims under §1123(b)(3)(A). The Fifth Circuit's language restricting non-debtor releases is strong, and, with the exception of a provision for limited releases for committees, does not hedge on its limitation of non-debtor releases. But, as it is only directly addressing releases available under § 524, this Court concludes that it cannot be interpreted to restrict the availability of settlements of claims under §1123(b)(3)(A). To interpret the language of *Pacific Lumber* otherwise would more or less nullify §1123(b)(3)(A), and, in this Court's view, run counter to Congress's intent to allow

parties to agree to settle claims between them. The recognition that *Pacific Lumber* does not restrict the availability of settlements of claim under §1123(b)(3)(A) thus provides an avenue for a Chapter 11 plan to provide for releases of liability for non-debtors. But, such releases must satisfy the requirements of a valid settlement of claims under the Code.[6] It would require, *inter alia*, consent and consideration by each participant in the agreement to be valid.

Unfortunately, this is where Article 12.1 runs into trouble. It is not quite a valid settlement of claims for the purposes of §1123(b)(3)(A). Because the Plan language quoted above applies to parties, such as the Trusts, who have voted against the Plan, and may even extend to individuals and entities who are not even parties to this case, the language of Article 12.1 may include people and entities who do not consent to the release of the derivative claims that they could bring. As a result, Article 12.1 violates the requirements of consent and consideration for a valid settlement of claims.

However, the removal of this overly broad language will remedy this flaw and distinguish it from the releases in *Pacific Lumber*. As noted in the Reply, Article 12.1 is a release of claims held by the Debtors against the Released Parties. As such, it will bar the post-confirmation filing

---

[6] The standard for evaluating the validity of a settlement contained in a Chapter 11 plan is the same as the standard for evaluating a settlement between a debtor and another party outside the context of the plan as long as the plan settlement does not violate statutory priority. *In re McCorp Fin., Inc.*, 160 B.R. 941, 951 (S.D. Tex. 1993) ("[U]sing a different standard in plan-connected settlements than in independent pre- or post-plan settlements lacks an economic, legal, or rational basis. If a settlement is essential to the plan and if it treats one class better than its statutory position, a higher standard may be necessary . . . ."). Stated differently, settlement provisions in a Chapter 11 plan must satisfy the standards used to evaluate compromises under Rule 9019. *See, e.g., In re Cincinnati Microwave*, 210 B.R. 130, 132 (Bankr. S.D. Ohio 1997) ("After due consideration, the court concludes that the Settlement Agreement between debtor and the [p]laintiffs cannot be approved. The reason for denying approval is that . . . [the] debtor would receive no consideration for its proposed contribution to the [s]ettlement [a]greement."); *See National Ecological Foundation v. Alexander*, 496 F.3d 466, 477-78 (6th Cir. 2007) ("A consent decree is essentially a settlement agreement subject to continued judicial policing. It is a hybrid in the law, sharing features of both a *voluntary settlement agreement* that requires no judicial intervention and a final judgment order that throws the prestige of the court behind the compromise struck by the parties.") (emphasis added; internal citations and quotation marks omitted).

of direct claims owned by the Debtors and the bankruptcy estate (the Estate), as well as any derivative claims by individuals or entities with standing to bring claims on behalf of the Debtors or the Estate. If properly worded, such a release is authorized under the Code pursuant to § 1123(b)(3)(A), which allows a plan to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." The exculpation of the Released Parties from claims held by the Debtors (or the Estate) is part of the consideration provided to Amegy Bank, which, in turn, is providing all of the funding to effectuate the terms of the Plan (including payments to the unsecured creditors). As a result, the release in Article 12.1 can be a legitimate settlement of claims owned by the Debtors or the Estate under § 1123(b)(3)(A). It should be noted that, properly worded, Article 12.1 is distinguishable from *Pacific Lumber* on this basis—it is not a simple discharge of liability, but rather a settlement of claims, for consideration, pursuant to arms-length negotiations, that satisfies the requirements of § 1123(b)(3)(A).

C. **Article 12.2**

Article 12.2 of the Plan contains numerous provisions that conflict with the Code or specifically fall into the category of releases forbidden by *Pacific Lumber*. For example, Article 12.2 proposes an injunction of all persons:

> THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM AGAINST, OR BE OWED OBLIGATIONS BY, THE ESTATES, OR WHO HAVE HELD, CURRENTLY HOLD OR MAY HOLD AN INTEREST IN ANY DEBTOR, REGARDLESS OF WHETHER OR NOT SUCH CLAIMANT AFFIRMATIVELY VOTES TO ACCEPT THIS PLAN, FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF SUCH CLAIM OR INTEREST:
>
> (I) COMMENCING, CONDUCTING, OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY DEBTOR,

              THE PURCHASER, THE COMMITTEE, THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE REPRESENTATIVES;

(II)    ENFORCING, LEVYING, ATTACHING, COLLECTING, OR OTHERWISE RECOVERING IN ANY MANNER OR BY ANY MEANS, DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY DEBTOR, THE PURCHASER, THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE REPRESENTATIVES, OR;

(III)    CREATING, PERFECTING OR ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN, CHARGE, ENCUMBRANCE OR OTHER LIEN OF ANY KIND AGAINST ANY DEBTOR, THEIR PROPERTY (INCLUDING ANY PROPERTY CONVEYED PURSUANT TO THIS PLAN OR THE ENTERPRISE APA), THE PURCHASER, THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE REPRESENTATIVES, OR;

(IV)    ASSERTING ANY[ ] RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO ANY DEBTOR, THE PURCHASER, THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE REPRESENTATIVES, OR; AND (*sic*)

(V)    PROCEEDING IN ANY MANNER, DIRECTLY OR INDIRECTLY, IN ANY PLACE WHATSOEVER AGAINST ANY DEBTOR, THE PURCHASER, THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE REPRESENTATIVES.

Article 12.2 seeks to provide varying degrees of protection from the post-confirmation prosecution of claims against five entities (and their representatives): the Debtors (to whom Article 12.2(I)-(V) applies); the Purchaser (to whom Article 12.2(I)-(V) applies); the Committee (to whom Article 12.2(I) applies); the Liquidating Trust (to whom Article 12.2(I)-(V) applies); and the property of any Debtor (to whom Article 12.2(III) applies). At the Hearing, counsel for the Trusts stipulated to the propriety of the injunction as applied to the Purchaser, so Article 12.2 is acceptable in its entirety as it applies to the Purchaser and its representatives. However, Article

12.2 is violative of the Code with respect to the other four entities which this injunction purports to protect.

The injunction is inappropriate as applied to the Debtors because a liquidating Chapter 11 plan may not provide for the discharge of the debtor. § 1141(d)(3). An injunction preventing the post-confirmation prosecution of claims would certainly operate as a discharge of the Debtors. Accordingly, it is impermissible under the Code. For the same reasons, actions against property of the Estate may not be enjoined after the confirmation of a liquidating plan. § 1141(c) & (d)(3).

The injunction is also inappropriate as applied to the Committee. Whereas the Committee, its members, and its representatives are eligible for qualified immunity for acts or omissions during the pendency of the Chapter 11 case pursuant to *Pacific Lumber*, such immunity may not include willful or gross misconduct, nor acts outside the scope of their duty, nor may it extend outside the time period of the pendency of the case. *See* 584 F.3d at 253; *In re Pilgrim's Pride Corporation*, 2010 Bankr. LEXIS 72 at *13 (Bankr. N.D. Tex 2010) (". . . committees and their members are entitled to qualified immunity for any acts or omissions during a [C]hapter 11 case that were within the scopes of their duties."). Because these limits are not imposed on the injunction as applied to the Committee, it is impermissible.

Finally, the injunction is also inappropriate as applied to the Liquidating Trust. The Liquidating Trust is a third-party who is not entitled to discharge under the plain language of § 524(e) and *Pacific Lumber*. 584 F.3d at 253.

D.   **Article 12.4**

Article 12.4 consists of three parts: Articles 12.4.1, 12.4.2, and 12.4.3. Article 12.4.1 is impermissible under the Code. It provides that:

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, THE RELEASED PARTIES ARE HEREBY RELEASED FROM AND SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT TAKEN OR OMISSION MADE IN GOOD FAITH IN CONNECTION WITH OR IN ANY WAY RELATED TO (A) NEGOTIATING, FORMULATING, IMPLEMENTING, CONFIRMING, ADMINISTERING, OR CONSUMMATING THE PLAN, THE DISCLOSURE STATEMENT OR ANY PLAN DOCUMENT, OR OTHER AGREEMENT OR DOCUMENT CREATED IN CONNECTION WITH OR RELATED TO THIS PLAN, THE DISCLOSURE STATEMENT, ANY PLAN OF REORGANIZATION OR LIQUIDATION OR DISCLOSURE STATEMENT OF ANY OF THE DEBTORS, OR THE ADMINISTRATION OF THESE CHAPTER 11 CASES, OR (B) ANY LIABILITY, CLAIM OR CAUSE OF ACTION, WHETHER KNOWN OR UNKNOWN, ASSERTED OR UNASSERTED, BELONGING TO OR ASSERTABLE BY THE DEBTORS OR THE ESTATES AGAINST THE RELEASED PARTIES, FROM THE BEGINNING OF TIME UNTIL THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT NOTHING IN THIS SECTION SHALL BE CONSTRUED TO RELEASE ANY RELEASED PARTY FROM WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER.

This is exactly the sort of release the Fifth Circuit forbade in *Pacific Lumber*: it releases the Released Parties from liability for non-willful misconduct during the pendency of the bankruptcy. 584 F.3d at 252 (". . . the bargain the proponents claim to have purchased is exculpation from any negligence that occurred during the course of the bankruptcy.").

On the other hand, Article 12.4.2 is permissible under the Code. It provides that:

ON THE EFFECTIVE DATE, THE INDIVIDUALS DESCRIBED IN THE FOLLOWING SENTENCE SHALL BE FOREVER IRREVOCABLY AND UNCONDITIONALLY RELEASED AND DISCHARGED FROM ANY AND ALL CLAIMS, ACTIONS, SUITS, DEBTS, ACCOUNTS, CAUSES OF ACTION, AGREEMENTS, PROMISES, DAMAGES, JUDGMENTS, DEMANDS AND LIABILITIES WHICH THE DEBTORS MAY HAVE AGAINST THEM, WHETHER HELD DIRECTLY, INDIRECTLY, OR DERIVATIVELY, WHICH ARE IN ANY WAY RELATED TO THE DEBTORS, AND ARISE FROM FACTS, CIRCUMSTANCES, EVENTS OR CONDITIONS OCCURRING OR OTHERWISE EXISTING PRIOR TO THE EFFECTIVE DATE. THE PERSONS RELEASED HEREBY ARE ALL THE DEBTORS' REPRESENTATIVES, INCLUDING ALL PERSONS WHO HAVE

SERVED AS DIRECTORS OR OFFICERS OR PERSONS SERVING IN SIMILAR CAPACITIES OF ANY OF THE DEBTORS ON AND AFTER THE PETITION DATE, INCLUDING BUT NOT LIMITED TO H. MALCOLM LOVETT, JR., JOEL HERGER, SETH BARON, SMITH HOWLAND, R.B. HERRSCHER, AND JONATHAN CRAIG, AS WELL AS THE DEBTORS' REPRESENTATIVES INCLUDING BUT NOT LIMITED TO STRATEGIC CAPTIAL CORPORATION, KING & SPALDING LLP, PARKMAN WHALING LLC.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE INJUNCTIONS, RELEASES, AND EXCULPATIONS CONTAINED IN THIS PLAN SHALL NOT PREJUDICE OR OTHERWISE IMPAIR AND ANY (*sic*) ALL CLAIMS THAT AMEGY, FOR ITSELF AND AS AGENT ON BEHALF OF THE PRE-PETITION LENDERS, MAY POSSESS AGAINST JOEL HERGER ON MR. HERGER'S GUARANTEE CLAIM, OR WITH RESPECT TO ANY AND ALL CLAIMS ARISING UNDER THE PRE-PETITION CREDIT AGREEMENT AND THE DIP FACILITY AS AGAINST THE NON-DEBTOR ENTITIES.

The ultimate effect of the language of 12.4.2 is very similar to Article 12.1 in that it seeks to extinguish claims held by the Debtors against third parties. However, unlike Article 12.1, Article 12.4.2 is entirely permissible under the Code because it does not seek to apply the release to parties who do not consent to it—such as the Trusts. As a result, Article 12.4.2 constitutes an acceptable settlement under § 1123(b)(3) because the Debtors and the Estate are releasing claims that are property of the Estate in consideration for funding of the Plan by Amegy. *See* Rule 9019.

Finally, Article 12.4.3 is unacceptable under the Code. Article 12.4.3 provides that:

PURSUANT TO THIS PLAN AND THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT PERMITTED UNDER SECTION 1125(E) OF THE BANKRUPTCY CODE, NONE OF THE DEBTORS, THE COMMITTEE, THE COMMITTEE'S MEMBERS (BUT ONLY IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE), AND ANY OF THEIR RESPECTIVE PREDECESSORS, AFFILIATES, SUBSIDIARIES, OFFICERS, DIRECTORS, PARTNERS, AGENTS, COUNSEL AND ADVISORS, SHALL HAVE ANY LIABILITY TO ANY CREDITOR, OR HOLDER OF A CLAIM OR INTEREST, OR OTHER PERSON FOR ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF

THE CHAPTER 11 CASES, INCLUDING, WITHOUT LIMITATION, THE FILING OF THE CHAPTER 11 CASES, THE PROSECUTION OF THE CHAPTER 11 CASES, THE NEGOTIATION, PREPARATION AND PURSUIT OF CONFIRMATION OF THIS PLAN, OR THE CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, EXCEPT FOR ANY SUCH LIABILITY BASED ON WILLFUL MISCONDUCT OR FRAUD OF SUCH PARTIES AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT.

Article 12.4.3 is wholly unacceptable with respect to the Debtors. As noted above, when the plan is a liquidating plan, a debtor is not eligible for discharge. § 1141(d)(3). Moreover, even if the Debtors' Plan was a rehabilitative plan, the Debtors' discharge under such a plan would be limited to those claims enumerated in §§ 524 & 1141, and the language in the Plan in the case at bar is not even limiting in this respect. *In re Pilgrim's Pride Corp.*, 2010 Bankr. LEXIS 72 at *13 ("The releases found in Article X, in so far as they apply to [d]ebtors and the [r]eorganized [d]ebtors, are valid to the extent consistent with *sections 524* and *1141* of the Code.") (emphasis in original). Stated differently, any discharge in a rehabilitative plan is limited to claims which arose pre-petition or are specifically enumerated post-petition claims; the Chapter 11 process is not intended to provide an ongoing, all-encompassing, and generic liability shield for debtors.

Article 12.4.3 would be acceptable under the Code as applied to the Committee with the exception that it acts as a release of liability for gross negligence and acts outside the scope of its duty, which runs afoul of the requirements of *Pacific Lumber*. Therefore, as presently drafted, Article 12.4.3 is impermissible.

## IV. DENIAL OF CONFIRMATION OF THE PLAN

On November 9, 2010, this Court issued an Order reflecting the findings of fact and conclusions of law made above. This Order gave the Debtors a deadline for filing a fourth amended plan to cure the deficiencies regarding the release provisions. The Order also set forth that if the Debtors failed to meet this deadline, then the Court would enter a separate order denying confirmation of the Plan.

## V. THE DEBTORS AMEND THE PLAN TO CURE THE DEFICIENCIES

After the Court's Order was entered on the docket on November 9, 2010, the Debtors conducted negotiations with the Trusts, and agreement was reached among all parties on revised language for the objectionable provisions in the Plan. Thereafter, the Debtors filed their Fourth Amended Plan (the Fourth Amended Plan) and their Agreed Findings of Fact, Conclusions of Law and Order Confirming Debtors' Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (the Agreed Amended Confirmation Order). These pleadings contain language modifying or eliminating the offending exculpatory clauses found in the Plan. This Court believes these pleadings contain examples of releases which constitute acceptable releases under § 524(e) and settlements of claims under § 1123(b)(3). The Court therefore now reviews this language in order to provide guidance to practitioners who are drafting Chapter 11 plans.

Paragraph 25 of the Agreed Amended Confirmation Order, entitled "Injunction in favor of Committee," is an acceptable example of a release covering a creditors' committee under § 524 because this provision expressly does not release the Committee for gross negligence, willful

conduct, or conduct outside the scope of its duty. The provision that is acceptable now reads as follows:

> PROVIDED THAT THE EFFECTIVE DATE OCCURS, THE ENTRY OF THE CONFIRMATION ORDER SHALL BE DEEMED TO PERMANENTLY ENJOIN ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM OR INTEREST FROM COMMENCING, CONDUCTING, OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE COMMITTEE OR THEIR REPRESENTATIVES FOR ACTS OR OMISSIONS DURING THE TIME PERIOD OF THE PENDENCY OF THE CHAPTER 11 CASES; PROVIDED, HOWEVER, THAT NOTHING IN SECTION 12.2.1 OF THE PLAN, AS REVISED BELOW, SHALL BE CONSTRUED TO ENJOIN ANY PERSONS FROM TAKING ANY ACTIONS AS DESCRIBED IN SECTION 12.2.1 OF THE PLAN, AS REVISED BELOW, AGAINST THE COMMITTEE OR ITS REPRESENTATIVES BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OR ACTS OUTSIDE THE SCOPE FO THE COMMITTEE'S EXERCISE OF ITS DUTIES AS PROVIDED UNDER 11 U.S.C. § 1103(C) DURING THE TIME PERIOD OF THE PENDENCY OF THE CASE.

Paragraph 65 of the Agreed Amended Confirmation Order, entitled "Settlement and Release of Claims," is an example of an acceptable settlement of claims under § 1123(b)(3) because it releases claims only of parties who have consented and to whom consideration has been provided. The provision that is acceptable now reads as follows:

> EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, ON THE EFFECTIVE DATE, (a) THE DEBTORS; (b) EACH PERSON THAT HAS FILED A PROOF OF CLAIM; AND (c) EACH ENTITY (OTHER THAN A DEBTOR), THAT HAS HELD OR NOW HOLDS A CLAIM OR INTEREST (EACH, A "CLAIMANT") AND WHO HAS RECEIVED NOTICE OF THE CASES, EXCLUSIVE OF ANY PARTY THAT TIMELY VOTED NOT TO ACCEPT THIS PLAN, IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTORS AND THE LIQUIDATING TRUST UNDER THIS PLAN AND THE CASH TO BE DELIVERED IN CONNECTION WITH THIS PLAN, SHALL HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND EXONERATED EACH

RELEASED PARTY FROM ANY AND ALL CAUSES OF ACTION WHATSOEVER THAT CONSTITUE PROPERTY OF THE ESTATES, INCLUDING ANY DERIVATIVE CAUSES OF ACTION ASSERTED OR THAT COULD BE ASSERTED ON BEHALF OF THE DEBTORS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE; PROVIDED, HOWEVER, THAT NOTHING IN THIS SECTION 12.1 SHALL APPLY TO ANY PARTY THAT HAS OBJECTED TO THIS PROVISION, INCLUDING THE SCIANNA TRUSTS. NOTHING IN THIS SECTION 12.1 SHALL BE DEEMED A RELEASE OF A CLAIMANT'S DIRECT CLAIM OR CAUSE OF ACTION AGAINST THE RELEASED PARTIES. FOR THE SAKE OF CLARITY, THIS RELEASE APPLIES ONLY TO CAUSES OF ACTION THAT ARE PROPERTY OF THE ESTATES OR DERIVATIVE OF PROPERTY OF THE ESTATES AND NOT TO ANY DIRECT OR PERSONAL CAUSES OF ACTION, IF ANY, WHICH MIGHT BELONG TO INDIVIDUAL CLAIMANTS AGAINST ANY OF THE RELEASED PARTIES.

## VI. CONCLUSION

Because the Court concluded that the amended provisions were acceptable, the Court confirmed the Fourth Amended Plan.

Signed on this 24th day of November, 2010.

_____
Jeff Bohm
United States Bankruptcy Judge